## SMALLWOOD *v.* STATE

[No. 152, September Term, 1957.]

*Decided March 3, 1958.*

Before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

Submitted on brief by *John H. T. Briscoe* for the appellant.

Submitted on brief by *C. Ferdinand Sybert, Attorney General, Stedman Prescott, Jr., Deputy Attorney General,* and *Walter B. Dorsey, State's Attorney for St. Mary's County,* for the appellee.

Prescott, J., delivered the opinion of the Court.

Eugene Smallwood, a Negro man, was convicted of the crime of common law rape by a jury in the Circuit Court for Charles County, and sentenced by Judges Digges and Dorsey to life imprisonment. The appellant was indicted in St. Mary's County, but, at his request, the trial was removed to Charles County. From this conviction and sentence, he has appealed.

The single question presented is, Was the evidence offered by the State sufficient to identify the defendant so as to sustain his conviction for the crime of rape?

When this Court is called upon to review the sufficiency of the evidence to sustain a conviction in a criminal case tried before a jury, we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but determine if there be any relevant evidence given to the jury which would properly sustain the conviction. *Briley v. State,* 212 Md. 445, 447, 129 A. 2d 689.

The State offered, *inter alia,* the following testimony. The prosecuting witness was a housewife, forty-seven years of age, who resided in a trailer in St. Mary's County. She testified to these facts. On December 6, 1956, around 8:00 or 9:00 p.m., she left her trailer and started to walk down the road to Hood's Market Bar, in order to purchase some

18

bread and milk. When she had "gone a pretty good distance down the road," a car came up and stopped. It contained two male Negro passengers, and one of them inquired if she wanted to ride. At that time, it was dark and she could not tell "who it was" so she said, "No, thanks just the same." Another car went by and she observed a birthmark or scar on the left side of one of the men's faces. One of them she judged to be between 25 and 30 years of age; the other older. She was again asked if she did not want to ride and she replied, "No, if I did, I would not ride with a darn Negro." The men proceeded on, and, after a short interval, she continued walking down the road. She had not gone far when she was accosted by two men on foot, whom she took to be the same men who were in the automobile. The younger one told the older to "grab" her and said, "Slap your hand over her mouth, don't let her scream." The older of the two did this. This was the one who had the scar on his cheek, and she again noticed it. The younger man told the older to take her across the road. She started to "holler again," and "he hit a hand over (her) mouth again." Then they both took hold of her and "dragged" her across the road. She "struggled" and "kicked the best she could." When she kicked, the younger one "let (her) have it, right here." When he hit her, she became dazed, and lost the power to resist them. During the struggle she lost her shoes. The younger one said, "I heard what you said back there, I don't like it, so you won't ride with Negroes?" The appellant, who was the younger man, then "laid down on top" of her. She could only see their faces by the reflection from a lighted billboard nearby, but she recognized their voices. The younger one told her he was going to have intercourse with her, whether she wanted to or not. She resisted; he "jerked" her and "pushed" her up and down on the root of a tree; and she "blacked out." The appellant proceeded to have intercourse with her. After further conversation, the two men left and she went into the road, stopped an automobile and got its operator to take her directly to a hospital. She noticed the younger man had straight and unusual hair, and one of the men left his hat at the scene.

Shortly after the alleged assault, the prosecuting witness was examined at the hospital by a physician, who testified that, when admitted, she was very emotionally upset and hysterical; that he removed a specimen of fluid from the inside of her vagina which contained spermatozoa, which showed that copulation had taken place within the brief past; that he discovered bruises on her body and arms; and there were small fragments of dried leaves and dirt in her pubic region.

On the morning of December 7, 1956, the prosecuting witness took a deputy-sheriff, William E. Sanner, to the scene claimed by her to be the location where she was assaulted. Sanner testified he found there a pair of shoes (later identified as belonging to the prosecutrix), a package of cigarettes and an army fatigue cap. He further testified that the location was a wooded area about 40 feet off the highway, and its condition indicated that "quite a shuffle" had taken place there. He also stated that at the time of the trial, the appellant had his hair cut about six inches shorter than usual.

The clothing worn by both the prosecutrix and the appellant at the time of the alleged assault was examined by a textile chemist and hair fiber expert of the Federal Bureau of Investigation. He testified his examination disclosed seminal discharge on the pair of feminine panties and also on the pair of male trousers. He also testified the male and female clothing was scraped and the fibers obtained by this scraping were examined microscopically, which disclosed that fibers from the green female slacks worn by the prosecuting witness were on the trousers and jacket worn by the appellant.

From the above, it is readily apparent that it requires no extended discussion to show there was competent and relevant evidence from which the jury was entitled to find, as it did, that the accused was the perpetrator of the crime with which he was charged.

*Judgment and sentence affirmed, with costs.*