**Leonard HALL, Jr.**

v.

**WARDEN, MARYLAND PENITENTIARY.**

**Civ. No. 13450.**

United States District Court
D. Maryland.

Jan. 23, 1962.

**640**

William F. Mosner, Towson, Md., for petitioner.

Thomas B. Finan, Atty. Gen., Robert F. Sweeney and Thomas W. Jamison, III, Asst. Attys. Gen., for respondent.

THOMSEN, Chief Judge.

This petition for a writ of habeas corpus was filed by a state prisoner (Hall), who was convicted of first degree murder by a jury in the Circuit Court for Baltimore County, Maryland (Menchine and Lindsay, JJ), and was sentenced to death. The conviction was affirmed on appeal, Hall v. State (July 8, 1960), 223 Md. 158, 162 A.2d 751. Hall's application for relief under the Uniform Post Conviction Procedure Act, Anno.Code of Md., 1957 ed., Art. 27, secs. 645A–645J (the UPC PA), was heard and denied by the Circuit Court for Baltimore County (Raine, J), and leave to appeal was denied by the Court of Appeals of Maryland in an opinion which discussed all of the points raised, namely: "(a) that he was not afforded an adequate opportunity to testify in his own behalf; (b) that he was

denied the right to counsel when questioned by police shortly after his arrest and gave a damaging statement, which was used against him and which could not have been obtained from him if he had then had counsel; and (c) that evidence obtained by an illegal search was used both to obtain damaging admissions from him and as evidence against him at his trial." Hall v. Warden (March 10, 1961), 224 Md. 662, 168 A.2d 373. A petition for a writ of certiorari was denied by the Supreme Court of the United States (October 9, 1961), 368 U.S. 867, 82 S.Ct. 78, 7 L.Ed.2d 65.

Because of the particular circumstances, that life is at stake, and that neither this court nor any Maryland State court has yet construed Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, this court issued a writ of habeas corpus, so that petitioner might have an opportunity to present his evidence on all issues. At the hearing before this court, however, petitioner and his counsel both stated that they wished to submit their case on the transcript of the trial prepared for the appeal and the transcript of the UPCPA hearing. The State also submitted the case on the record. Counsel for petitioner argued (1) that Hall was denied an opportunity to testify at his trial; (2) that the search of Hall's hotel room was illegal and that the use of material seized therein (a) as evidence at his trial, and (b) to procure damaging admissions from him, violated his constitutional rights, and (3) that Hall's confession was not voluntary, because he had been denied the right to counsel by the police and for other reasons.

The facts of the case pertinent to questions (2) and (3) are set out at length in the careful opinion of Chief Judge Brune on the original appeal, 223 Md. at 163 et seq., 162 A.2d at 754 et seq. They will not be repeated herein, but that opinion should be read in connection with this opinion. The evidence shows the callous murder of a woman, aged 66, committed in connection with the robbery of a tavern operated by the victim and her husband. On the stand, in the UPCPA proceeding,

Hall admitted the robbery and admitted tying the woman and leaving her on the floor, but said that she was alive when he left.

### (1)

*The alleged denial of an adequate opportunity to testify.*

At his trial and on appeal from his conviction Hall was represented by two lawyers employed for him by his family. Before the statement which Hall made to the police was admitted in evidence against him, Hall testified out of the presence of the jury concerning the taking of the statement and his treatment from the time the police first picked him up until the statement was made. After the judges decided to admit the statement in evidence, that testimony was read to the jury. After the State had closed its case the defense called six witnesses, who testified, and then called Hall, but he did not have an opportunity to testify before court adjourned. Overnight his counsel reconsidered the desirability of Hall's taking the stand. The essential facts on this phase of the case are summarized in the opinion of the Court of Appeals in the UPCPA proceeding, 224 Md. at 665, 168 A.2d at 375.

Hall testified before Judge Raine in that proceeding, as did his junior counsel. Judge Raine considered the facts quite fully and delivered a carefully reasoned opinion, in which he said, inter alia: "He [Hall] merely yielded to the request or demands of his attorneys and their advice that he stay off the stand and the fact that if he took the stand he was going to admit that he robbed the tavern in question and he tied up the victim may well have persuaded them to use every reasonable effort to keep him off the stand."

The Court of Appeals, on application to review Judge Raine's decision, said: "The question comes down, we think, to whether an alleged error in trial tactics by a defendant's own counsel amounts to a deprivation of due process of law under either the Fourteenth Amendment or the Constitution of this State. We are

not prepared to say that the choice here in question was a bad one; but if we assume that it was, and if we further assume that Hall did not intend to acquiesce in it, his own counsel's decision not to call him as a witness involved no action by the State, and did not, in our opinion, amount to a violation of Hall's constitutional rights, and hence affords no ground for relief under the UPCPA. Even on direct appeal the trial tactics of counsel are not ordinarily reviewable by this Court. Hardesty v. State, 223 Md. 559, 563, 165 A.2d 761; Madison v. State, 200 Md. 1, 87 A.2d 593, and errors in trial tactics do not afford a basis for relief under the UPCPA; * * * The applicant's contention would seem to lead logically to a retrial of every criminal case resulting in a conviction—some because the defendant (as here) did not testify in his own defense, others because he did so testify." 224 Md. at 665–666, 168 A.2d at 375.

■■■ The issue was fully and fairly considered by the State Courts. The question of fact was not free from difficulty, but Judge Raine had the advantage of observing both Hall and his lawyer witness, who is a member of the bar of Judge Raine's court, as is also the lawyer who was senior counsel for Hall at the trial. Petitioner did not take the stand at the hearing before me, although he was given an opportunity to do so; instead, he stated in open court that he wished to submit on the record. Under the evidence so submitted, I find that Hall acquiesced, reluctantly, in the decision of his counsel. The conclusions reached by Judge Raine and by the Court of Appeals of Maryland on this point did not deny Hall any constitutional right.

### (2)

*The alleged illegal search and use of material obtained thereby as evidence against Hall at his trial and to procure damaging admissions from him.*

Petitioner relies primarily on Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, decided by the Supreme Court on June 19, 1961.

The State contends: (a) that under the law applicable to this case the use of material seized by State officers in an illegal search would not deprive a defendant of any constitutional right, and that Mapp v. Ohio does not help this petitioner, whose conviction was affirmed on appeal before that decision; (b) that any challenge to the legality of the search and the use of the fruits thereof was waived by petitioner's failure to raise the question either at his trial or on appeal; and (c) that the search was not illegal, because Hall consented to it.

(a) In Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, decided in 1949, the Supreme Court held in effect that the Fourteenth Amendment prohibits unreasonable searches and seizures by state officers, but that the exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, would not *then* be imposed upon the states as an essential ingredient of the right. See Mapp v. Ohio, supra, at p. 650, 81 S.Ct. 1684.

At the time of the trial and at the time the conviction was affirmed on appeal, the Maryland law permitted the admission into evidence in *felony* cases of material seized by State officers in an unlawful search, but prohibited its admission in most *misdemeanor* cases. Anno. Code of Md., 1957 ed., Art. 35, sec. 5; Salsburg v. State, 201 Md. 212, 94 A.2d 280, aff'd sub nom, Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281; Barker v. Warden, 208 Md. 662, 119 A.2d 710; Givner v. State, 210 Md. 484, 124 A.2d 764; Mulcahy v. State, 221 Md. 413, 158 A.2d 80.

Term after term the Supreme Court refused to overturn the doctrine of the Wolf case until the States had "adequate opportunity to adopt or reject the [Weeks] rule." Irvine v. California, 347 U.S. 128, 134, 74 S.Ct. 381, 384, 98 L.Ed. 561; Mapp v. Ohio, supra, at p. 654, 81 S.Ct. 1684. But in Mapp v. Ohio, decided in June 1961, the opinion of the Court, delivered by Mr. Justice Clark, said: " * * * we can no longer permit that right to remain an empty promise" and

held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." 367 U.S. 643, at 655, 660, 81 S.Ct. 1684 at 1691.

Until the Supreme Court itself clarifies the point, it is impossible for any other court or judge to be certain whether and to what extent the Supreme Court intended the decision in Mapp v. Ohio to be retrospective. A majority of the Court of Appeals of New York has concluded that the exclusionary rule stated herein should be applied in a case where the judgment of conviction had not yet become final, because of a pending appeal, at the time Mapp v. Ohio was decided. People v. Loria (Nov. 30, 1961), 10 N.Y. 2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478. See also Shorey v. State (January 23, 1962), Md., 177 A.2d 245. But it has not yet been held in any case cited or found that all persons convicted in state courts during the period between Wolf v. Colorado and Mapp v. Ohio are entitled to a new trial or release if any evidence, obtained as the result of an unreasonable search and seizure was admitted at their trial, even though the judgment of conviction may have become final long before Mapp was decided and whether or not the point was raised at the trial.

In view of the frequent use in Mr. Justice Clark's opinion of such words as "then", "today", and "no longer", and the reasons given for the Supreme Court's previous refusal to impose the Weeks exclusionary rule on the states, such an extreme construction appears unwarranted. I conclude that Mapp v. Ohio was not intended to require that a new trial or release must be granted to a person convicted in a state court because evidence obtained as the result of an unlawful search was admitted in evidence at the trial, where the point was not raised at the trial and the judgment had become final before the decision of the Supreme Court in the Mapp case. See Gaitan v. United States, 10 Cir., 295 F.2d 277, 279–280. In the case at bar the point was not raised at the trial or on appeal from the

conviction, and the judgment had become final before Mapp v. Ohio. So, even if the evidence had been illegally seized, its admission would not have deprived petitioner of his constitutional rights.

(b) As we have seen, the legality of the search was not raised by petitioner at his trial nor on appeal from his conviction. It was raised in the UPCPA proceeding, but petitioner did not testify with respect thereto, submitting the point on the record prepared for the original appeal, as he has also elected to do at the hearing in this court. In the UPCPA case the Court of Appeals said: "Any challenge to the legality of the search and the use of the fruits thereof was waived by failure to raise the question either at the trial or on appeal." The Court added: "We do not express or imply any opinion as to the legality of the search and seizure here complained of." 224 Md. at 664, 168 A.2d at 374.

The general rule, as stated by the Fourth Circuit in Whitley v. Steiner, 293 F.2d 895, after a reexamination of all relevant Supreme Court cases, is that " * * * where a state prisoner, asserting a denial of constitutional rights in connection with his conviction, has a remedy in the state court but fails to avail himself of it, and later finds himself without a state remedy, he may not have redress through federal habeas corpus. * * * Under such circumstances the petitioner has, to utilize what is probably the most appropriate legal doctrine, 'forfeited' his constitutional claim." 293 F.2d at 898, 899. See also Mapp v. Ohio, 367 U.S. at 659, n. 9, 81 S.Ct. 1684.

The Fourth Circuit recognized a number of exceptions to the general rule, none of which apply in this case, unless possibly this is an instance "where the petitioner can present other strong reasons justifying his failure; or finally, where there exist particular circumstances which are deemed to justify federal action." 293 F.2d at 899, 900.

Petitioner cites the change in the law and the fact that this is a capital case as the reasons and particular circumstances

justifying federal action, and relies on Williams v. Georgia, 349 U.S. 375, 75 S. Ct. 814, 99 L.Ed. 1161. It is true that in Williams v. Georgia the Supreme Court said: "That life is at stake is of course another important factor in creating the extraordinary situation." 349 U.S. at p. 391, 75 S.Ct. at p. 823. However, in Williams v. Georgia the State had conceded at the argument in the Supreme Court that, as a matter of substantive law, Williams had been deprived of his constitutional rights. 349 U.S. at p. 390, 75 S. Ct. 814. No such concession had been made in the case at bar; the State denies that the search was illegal, and relies on that point as well as on waiver and on the law at the time of conviction and appeal. It should be noted that the Supreme Court did not order that Williams be released, but remanded the case to the State Supreme Court "for reconsideration".[1] 349 U.S. at p. 391, 75 S.Ct. 814.

A District Court has no power to order such a remand, although a similar result might be accomplished by other means. If it appeared from the record that the search was in fact illegal, this court would be loath to hold that petitioner had forfeited his constitutional claim. The legality of the search should therefore be examined.

(c) There was no search warrant, and the search was not made incident to the arrest. Thus, to have been lawful, it must have been made with the consent of the petitioner.

Ordinarily the burden of proof on the issue of consent is on the prosecution. Here, however, no question of the legality of the search was raised by petitioner either at his trial or on appeal from his conviction, and the highest court of the State has held that he thereby waived the right to challenge the legality of the search and the use of the fruits thereof.

Petitioner must show that this ruling violates his constitutional rights; to do that he must show that the search was illegal.

Neither petitioner nor the State offered any testimony on this point in the UPCPA proceeding or in this court; both submitted on the transcript of the trial prepared for the first appeal.

■ From the testimony of the police officers in that record it appears that Hall voluntarily approached the officers at the scene of the crime during the afternoon following its commission, asked if they had found any fingerprints, and gave his address as the Ritz Hotel in Baltimore. There was no hotel of that name in the city. After his arrest, later that evening, and after several hours of questioning, he volunteered to show the police where the hotel was, and was taken to the city to locate it. At one point during the ride, which will be discussed at greater length under (3) infra, he said: "I am not going to show you any more," but later, without any threats, promises or inducements having been made to him, he said: "You fellows have been nice to me, I will show you where the apartment, where the hotel room is." When they came to the hotel, Hall gave the officers the number of his room, and after the evidence squad had gone in he said that they would find the clothes there. They also found the cash and checks taken in the robbery, but, as we shall see in the discussion under (3) below, none of this material was shown to Hall until after he had made his confession. Upon consideration of all the evidence in the record, I conclude (1) that Hall has not shown that the search was illegal, and (2) that no strong reasons or special circumstances exist in this case to prevent the application of the general rule stated in Whitley v. Steiner,

1. The Supreme Court added: "Fair regard for the principles which the Georgia courts have enforced in numerous cases and for the constitutional commands binding on all courts compels us to reject the assumption that the courts of Georgia would allow this man to go to his death as the result of a conviction secured from a jury which the State admits was unconstitutionally impaneled. Cf. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791." 349 U.S. at 391, 75 S.Ct. at 824.

that Hall has forfeited his right to challenge the search.

For each of the foregoing reasons, I conclude that the use of the material obtained in the search does not entitle petitioner to any relief in this case.

(3)

*Voluntariness of the Confession.*

Hall contends that his oral confession and other admissions were not voluntary because he had been denied the right to counsel by the police, because material seized in the hotel room was used to obtain the admissions, and for other reasons.

The voluntariness of the confession made by Hall was submitted to the jury in a fair charge to which he took no exception. The question of due process with respect to the confession was argued to and decided by the Court of Appeals on appeal from the conviction. 223 Md. at 168 et seq., 162 A.2d at 756 et seq. The testimony upon which petitioner now relies was recited by the Court of Appeals, 223 Md. at 163 et seq., 162 A.2d at 754 et seq., but the alleged denial of the right to counsel does not appear to have been stressed by petitioner's attorneys, who relied on other arguments. At the UPCPA hearing and on the application for leave to appeal therefrom, petitioner contended "(b) that he was denied the right to counsel when questioned by police shortly after his arrest and gave a damaging statement, which was used against him and which could not have been obtained from him if he had then had counsel." The Court of Appeals held: "Contention (b), we think, was finally adjudicated on the prior appeal, and even if it were not, it was waived." 224 Md. at 664, 168 A.2d at 374.

■ To the extent that the decision of the Maryland Court was based on a con-clusion that Hall was not denied the right to counsel when questioned by the police and that the damaging admissions were legally obtained, that contention should be reviewed by this court on the merits; to the extent that the decision was based upon waiver, it may not be so reviewable. Whitley v. Steiner, 4 Cir., 293 F.2d 895, and cases cited therein.

■ The absence of counsel during prolonged police interrogation prior to arraignment does not itself violate due process of law, Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, Cicenia v. LaGay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, but it may be a factor in determining whether or not a confession was coerced. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948.

■ It has been held in a large number of cases that, regardless of a finding of voluntariness by judge or jury in a state proceeding, it is the duty of the federal court in considering a petition for a writ of habeas corpus to make its own independent determination of whether the confession was voluntary. Thomas v. Arizona, 1958, 356 U.S. 390, 393, 78 S.Ct. 885, 2 L.Ed.2d 863; Brown v. Allen, 1953, 344 U.S. 443, 507–508, 73 S.Ct. 397, 97 L.Ed. 469; Stein v. New York, 1953, 346 U.S. 156, 182, 73 S.Ct. 1077, 97 L.Ed. 1522; United States ex rel. Wade v. Jackson, 2 Cir., 1958, 256 F.2d 7, 9, cert. den. 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158; United States v. La Vallee, 2 Cir., 270 F.2d 513, 516, cert. den. 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382. However, it is not necessary nor indeed proper for the federal court to retry the issue in every case.[2]

■ There is little basis in the evidence for the contention that Hall was denied the right to counsel by the police.

2. Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361, and 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, dealt with a particular situation, where the state courts had applied a clearly erroneous and unconstitutional standard for deter-mining the admissibility of a confession. The Supreme Court did not abandon the general rule stated above. In the case at bar the charge to the jury stated the proper constitutional test applicable to the points raised by the defendant.

He did not suggest it in his testimony when he took the stand at the trial on the question of the voluntariness of his confession, nor did he mention it in his testimony before Judge Raine at the UPCPA hearing. The evidence on this point is confined to the uncontroverted testimony of the police officers at the trial. The evidence at the trial is set out at length in the opinion of the Maryland Court, 223 Md. at 164 et seq., 162 A.2d at 754 et seq., but some items should be noted here. Hall approached the officers at the scene of the crime on the afternoon after its commission and asked if they had found any fingerprints. He gave his name voluntarily, and said that he knew the victim and her husband well and frequently came to their tavern. More importantly, he said that he had been there on the previous night. Later that evening the officers arrested Hall at another tavern. When the officers appeared Hall said that he knew they were coming and told the proprietor, "They think I did it". He was taken "in custody for investigation" and was told that he was being investigated as to a possible connection with the Gaff murder. At the station, where he was questioned from about 7:45 p. m. to midnight, with time out for coffee, etc., the questions dealt principally with his activities during the week or so he had been in Baltimore, and with his new suit, about which he had given misleading information. When it appeared that he had given the wrong name for the hotel where he was staying, he volunteered to show the police where it was. About midnight they started to look for it and for a restaurant he said he had visited. At one point during the ride Hall said that he would show them where the restaurant was but would not show them where his hotel was, and then said, "I think I ought to see a lawyer". The officers told him, "That is your privilege", but Hall did not ask them to stop or to allow him to call a lawyer. The officer further testified that "he did not ask for a lawyer"; instead, after a period of silence Hall said, "You fellows have been nice to me. I will show you where the apartment, where the hotel room is". And he did so. When he testified with respect to the confession Hall agreed that he had "been treated nice." No threats or promises were made.

While the evidence squad was in the hotel, about 1:00 a. m., Hall started crying and said, "I am not afraid to die, I am afraid of going to hell. * * * They are going to find the clothes when they get up in the room." The officer asked Hall if he was willing to tell them about it. Hall agreed and said that if they would take him to a station he would tell them just what happened. Hall was then taken to the Parkville Station. On the way he said, "I don't know why I did it." At the station he made a long, oral statement, in which he admitted robbing the tavern, carrying a loaded gun, and binding and gagging Mrs. Gaff. He said that after taking the money he went to the bar and drank four or five shots of whisky, and then noticed that Mrs. Gaff had gotten the gag loose, that she was hollering for help. Hall said that he was not sure what happened then, "I must have killed her but I don't know."

After the statement was taken Hall was detained at the station, where he was seen that same morning by an attorney hired by his father.

I find that Hall was not denied the right to counsel by the police.

No material seized in the hotel room was used to obtain the confession from him, although Hall must have realized what the police probably had found in his room. Only after he had made his first admissions, and after his confession had been taken down in question and answer form by a stenographer, was he asked to identify the clothes, cash and checks which were seized at the hotel.

After considering all of the points and arguments made by counsel for petitioner, I conclude that the oral confession and other admissions were voluntarily made and that their admission in evidence did not deny petitioner any constitutional right.

An order will be entered remanding petitioner to the custody of respondent.