Eugene SMALLWOOD

v.

WARDEN, MARYLAND PENI-
TENTIARY.

Civ. No. 10757.

United States District Court
D. Maryland.

May 24, 1962.

Robert E. Cadigan, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen., and Robert F. Sweeney, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Eugene Smallwood, the petitioner, was found guilty of rape in the Circuit Court for Charles County, Maryland, and on May 22, 1957, was sentenced to life

# 326

imprisonment. After exhausting his State remedies he filed his third petition in this Court for a writ of habeas corpus and alleged facts which impelled the court to issue the writ and to appoint counsel. Through his counsel Smallwood contends that he was denied his rights under the Fourteenth Amendment to the Constitution of the United States in four respects: (1) that the State suppressed or withheld material evidence; (2) that his representation by counsel before, during and after his trial was utterly inadequate; (3) that evidence which had been illegally seized was used against him at his trial; and (4) that counsel was not appointed to represent him at his arraignment.

Smallwood, a Negro oyster tonger with an eighth grade education, 27 years old at the time of his trial, had been convicted several times by magistrates, but he had never been charged with a sex offense nor tried in a court of general jurisdiction. On December 6, 1956, he had sexual intercourse with a white woman in a wooded area off a road in St. Mary's County, Maryland. A co-defendant, who was with him, was found guilty of assault but not guilty of rape. Smallwood has never denied having intercourse with the woman, but has always denied using force, and claims that she consented.

After the incident the woman was taken to the out-patient department at the Patuxent Naval Air Station and was examined. She then complained to the police. On December 7 the co-defendant was arrested and made a statement, and about 1 A.M. on December 8 Smallwood was arrested and taken to the St. Mary's County jail at Leonardtown, where he was kept for nine days before he was given a preliminary hearing.

About 8 A.M. on December 8 a deputy sheriff, who was not one of the arresting officers and had no search warrant, went to Smallwood's house and, according to his testimony in this Court, asked Small-wood's wife for the clothes which Smallwood had worn the previous night, and was given them voluntarily. At the trial in Charles County the deputy sheriff testified that he went "into" the house and "took" the clothes; when objection was made to their use as evidence, the State did not suggest that they had been voluntarily given to the deputy sheriff; the objection was overruled because a felony was charged and not a misdemeanor. See Md.Code, 1957 ed., Art. 35, sec. 5; Salsburg v. State, 201 Md. 212, 94 A.2d 280, aff'd sub nom. Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281; Hall v. Warden, D.Md., 201 F.Supp. 639.

While Smallwood was in custody awaiting a hearing, he and his co-defendant were brought downstairs from their cells by the deputy sheriff, so that their pictures might be taken for publication in a local newspaper.

The prosecuting witness returned to the out-patient department at Patuxent before the preliminary hearing and was seen by Dr. O'Regan. She gave a history of having been raped by Portugese men 18 years before and having been treated for syphilis. Dr. O'Regan found that she had syphilis,[1] but no evidence of chancroid. Her husband did not have syphilis. Smallwood had a chancroid, but his blood test was negative. Many of the patients at the out-patient department told Dr. O'Regan that the prosecuting witness was frequenting taverns "for colored only" in the area and they had felt sooner or later she would get into trouble.

Dr. O'Regan was subpoenaed to the preliminary hearing, which was held on December 17, and gave the foregoing information to the State's Attorney. He was not asked to testify. No one remembered what happened at the hearing, except that Smallwood said nothing. He gave the State's Attorney a note requesting examination and treatment for his chancroid, which he thought showed the

---

1. Serological, Kolmer, Mazzini, and Treponema Pallidum Immobilization tests were all positive.

impossibility of forceful intercourse. Smallwood was repeatedly questioned by State officers, and at the request of the deputy sheriff was taken to Washington for a "lie detector test". The results of this test were neither communicated to Smallwood or his attorney nor were they offered in evidence.

On February 7, 1957, Smallwood and his co-defendant were presented and indicted in St. Mary's County. On February 9 they were arraigned. Smallwood said that he had no funds but had been trying to get a lawyer from the N.A.A. C.P., and the judge evidently believed that those efforts were continuing. Both defendants pleaded not guilty.

Early in March Smallwood and his co-defendant were taken to the judge's chambers, where the judge told them that he was going to appoint counsel for them, but that if they were able to get counsel for themselves the court-appointed counsel would step aside.

On March 19 two experienced members of the bar of St. Mary's County were appointed and after consultation decided which lawyer would represent which defendant. Smallwood's lawyer saw him only twice before the trial. On the first occasion, March 19, the interview was brief; the lawyer recommended that the case be removed from St. Mary's County because of prejudice from the unfavorable newspaper publicity. Smallwood reluctantly agreed, partly because he was under the impression, apparently mistaken, that he could not get a prompt trial in St. Mary's County because of repairs being made to the Court House. Smallwood's lawyer did not ask him for a full statement at that time, and did not consider checking on the local reputation of the prosecuting witness before deciding whether the case should be removed. The suggestion of removal was filed the same day.

Two or three weeks later Smallwood's lawyer visited him at the jail and took a full statement from him, to the effect that the prosecuting witness drank with the defendants by the side of the road and had intercourse with Smallwood on

the promise of money. Smallwood told his lawyer that a taxi-driver in a nearby cell knew about the reputation of the prosecuting witness for associating with Negroes and asked his lawyer to talk to the taxi-driver and to a tavern owner who had information which might help the defense. Despite the fact that the lawyer had the name of the taxi-driver and passed his cell on the way out, the lawyer made no effort at any time to interview him. The taxi-driver would have testified, as he did before me, that he worked the midnight shift, that on a number of occasions he had picked up the prosecuting witness and a colored man in the early morning hours, and that on two or three occasions she had had intercourse in his cab, once leaving unmistakable evidence thereof. Smallwood's lawyer did not interview any possible witnesses, made no preparation for the trial, and did not speak to Smallwood again until he was brought into court on April 29, in Charles County. The lawyer made no effort to obtain any information from the State, and the State's Attorney did not tell the defense or the court what he knew about the prosecuting witness. Dr. O'Regan was not summoned to testify.

Smallwood's lawyer made no adequate check on the prospective jurors, did not seek the assistance of a Charles County lawyer in selecting the jury, did not consider asking for a severance (although the State offered in evidence a verbal statement from the co-defendant implicating Smallwood, and the lawyer's only theory of defense was inadequate identification), made no attempt to show consent or the reputation of the prosecuting witness, without discussing the problems with Smallwood decided not to put him on the stand, offered no evidence, made no requests for instructions, took no exceptions to the brief charge and asked for no further instructions, although the charge did not refer to the elements of the crimes charged nor to the burden of proof on the State. He did object to the offer of defendant's clothes on the ground that they had been illegal-

ly seized. His argument to the jury was not transcribed.

No timely motion for new trial was filed. The lawyer did not talk to Small-wood before the sentence hearing on May 22, and urged no facts in mitigation beyond saying that the former offenses had been of an entirely different nature. Smallwood said that he wanted to appeal, and one of the judges said that his court-appointed counsel would still represent him. On May 29, the lawyer asked for and was allowed $500 for his services in the Circuit Court.

The lawyer did not talk to Smallwood about the appeal and never told him that he had appealed or what the results were. About two weeks after sentence and commitment Smallwood wrote to the Court of Appeals saying that he wished to appeal, and was told by the Clerk that he was too late since the time limit was ten days. His counsel's appeal was filed several days later.[2] His very short brief raised only the question of identification by the prosecuting witness; the illegal search and seizure point was not mentioned. The Court of Appeals affirmed the judgment and sentence. Smallwood v. State, 216 Md. 16, 139 A.2d 242. Smallwood's own petition for certiorari was denied by the Supreme Court. Smallwood v. Maryland, 357 U.S. 912, 78 S.Ct. 1160, 2 L.Ed.2d 1162.

Meanwhile, about June 1, 1957, Small-wood wrote one of the judges asking for a new trial, which was denied. After a futile petition in the Baltimore City Court, Smallwood filed a petition for a writ of habeas corpus in this court, based on the fact that his commitment paper showed his offense as "Carnal Knowledge".[3] On July 7, 1958, this court denied the petition on the ground that if the papers were in error they could be corrected, and if Smallwood had in fact been convicted of a non-existent crime, he had a remedy under the Uniform Post Conviction Procedure Act (UPCPA).[4]

Smallwood then, in August 1958, filed a petition for a hearing under the UPC PA in the Circuit Court for Charles County. The State's Attorney was notified, but nothing further was done, despite a follow-up letter from Smallwood in February 1959, acknowledged by a judge, until August 1959, when counsel was appointed to represent him on his petition. Counsel consulted with Small-wood and presented six points to the court: (1) that Smallwood's lawyer had elected a jury trial without consulting him; (2) that he was prejudiced by being tried jointly with his co-defendant; (3) that Smallwood had not been allowed to testify at his trial; (4) that the removal of the case to Charles County had proved a mistake; (5) that he was prejudiced by communications from the jury to the judge and the judge's reply; (6) that the State suppressed certain evidence as to defendants' movements on the night in question. It should be noted that neither Smallwood nor his counsel knew at that time of the far more important evidence—about the prosecuting witness—which the State had not disclosed.

In May 1960, the Circuit Court for Charles County dismissed the UPCPA petition without a hearing, but with a written opinion. Leave to appeal was denied. Smallwood v. Warden, 223 Md. 671, 164 A.2d 288. Certiorari was denied by the Supreme Court in April 1961. 365 U.S. 882, 81 S.Ct. 1032, 6 L.Ed.2d 193.

Meanwhile, in November 1960, this court had denied Smallwood's second petition for a writ of habeas corpus. The pending writ was issued on his third

2. See annotations to Rule 812, Maryland Rules of Procedure.

3. The bench warrant, the court dockets in Charles County, and the formal commitment after sentence, show the offense as "Carnal Knowledge". There is no such crime in Maryland if the victim is adult and sane. However, the first count of the indictment charged all the elements of common law rape.

4. See Md.Code, 1957, ed., Supp., Art. 27, secs. 645A–645J.

petition, filed in January 1962. The four points pressed by his court-appointed counsel at the hearing will be treated separately, but to some extent they support each other and should be considered as a whole.

### 1.

To support his contention that counsel should have been appointed to represent him at his arraignment, petitioner relies on Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. In the recent case of White v. State, 227 Md. 615, 177 A.2d 877, the Court of Appeals showed that the reason for the decision in Hamilton v. Alabama does not apply in Maryland, because in that case the Supreme Court had said: "Whatever may be the function and importance of arraignment in other jurisdictions, we have said enough to show that in Alabama it is a critical stage in a criminal proceeding. What happens there may affect the whole trial. Available defenses may be as irretrievably lost, if not then and there asserted, as they are when an accused represented by counsel waives a right for strategic purposes." 368 U.S. at 54, 82 S.Ct. at 158. In White v. State the Maryland Court of Appeals cited the applicable Maryland rules which supported its conclusion that "the arraignment under Maryland law is not a 'critical stage in a criminal proceeding,' as is the case in Alabama, and since determination of the need of the accused for counsel is made at the arraignment, sufficient time before trial will elapse for counsel to confer with the accused and raise any defense or objection which must be raised before trial."

In the case we are considering it appears that at the arraignment the judge reasonably understood from Smallwood's statement to him that efforts were still being made to obtain counsel from the N.A.A.C.P. The court did appoint counsel for Smallwood about a month later, 40 days before trial, which would have been sufficient time to prepare the case, if the lawyer had been reasonably diligent.

### 2.

In fact, however, the lawyer did nothing to prepare for trial. He evidently did not believe what his client told him and took no steps to check the story or to develop the available defense. Without question, as Judge Soper noted in Snead v. Smyth, 4 Cir., 273 F.2d 838, 842, " * * * mere mistakes or errors of counsel are not sufficient to establish a violation of the defendant's constitutional right. It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights." The right to an attorney embraces genuine and reasonably competent representation throughout all stages of the trial, and where the representation is of such low caliber as to amount to no representation, the guarantee of due process has been violated. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Turner v. State of Maryland, 4 Cir., 1962, 303 F.2d 507; People v. DeSimone, 9 Ill.2d 522, 138 N.E.2d 556. See also Johns v. Smyth, E.D.Va., 176 F.Supp. 949, 954. The representation of Smallwood by his court-appointed counsel was so inadequate as practically to amount to no representation at all. The guarantee of due process was violated.

### 3.

The case is made worse by the failure of the State's Attorney to disclose what Dr. O'Regan had told him about the history, physical condition and reputation of the prosecuting witness. The court accepts the testimony of the State's Attorney that he did not act from any improper motive in suppressing this evidence. But his motive is immaterial if the evidence was vital, i. e. was likely to have affected the result of the trial. Kyle v. United States, 2 Cir., 297 F.2d 507; United States ex rel. Thompson v. Dye, 3 Cir., 221 F.2d 763, cert. den. 350

U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773; People v. Savvides, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853.

The knowledge which the State's Attorney had acquired in the case we are considering went beyond the point decided in Humphreys v. State, 227 Md. 115, 121–123, 175 A.2d 777. Taken as a whole, it justified a serious doubt as to the chastity of the prosecuting witness, and might well have affected the result of the trial. Its suppression or withholding was prejudicial, especially in view of the attitude and testimony of the prosecuting witness at the trial, and the failure of Smallwood's lawyer to investigate and develop similar information which his client had given him. See Alcorta v. Texas, 355 U.S. 28, 78 S. Ct. 103, 2 L.Ed.2d 9.

### 4.

■ On the search and seizure point we are faced with the conflict between the testimony of the deputy sheriff in this court, that there was no illegal search and seizure, and his testimony at the trial and the apparent concession by the State at that time that there had been an illegal search and seizure, the fruits of which were, however, admissible under the Maryland law prevailing before Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The point was not pressed by Smallwood's lawyer on appeal, and would ordinarily be considered to have been waived. Whitley v. Steiner, 4 Cir., 293 F.2d 895. See also Hall v. Warden, D.Md., 201 F.Supp. 639. There are unusual circumstances in this case which might distinguish it from the cases cited, but it is not necessary to decide that point in view of the decision on the other issues.

\*

The constant broadening of the interpretation of the Fourteenth Amendment by the Supreme Court is bringing to our court a flood of petitions for writs of habeas corpus from prisoners in the Maryland penitentiary and other State institutions. Repeatedly we find that they have filed proceedings in the State courts under the UPCPA, which have been denied without a hearing at which the prisoner has had an opportunity to testify or to present his case orally. We realize that the UPCPA does not require such a hearing, that the petitions which the prisoners file in the State courts are often vague and indefinite, as are the petitions they file with us, and that the UPCPA has been interpreted by the Court of Appeals of Maryland somewhat restrictively. But the State courts, as well as the Federal courts, are charged with the responsibility of seeing that constitutional rights have not been denied, and are often better able than this court to determine the facts, if only by reason of time and place. We venture to suggest that when such a petition is filed in a State court alleging, however clumsily, any facts tending to show a deprivation of constitutional rights, the State court might grant the prisoner one hearing at which he would be given the opportunity to present all of the facts upon which he bases his claim. This court would then not be forced, as in this case, to receive evidence about events which happened some five years ago, when most of the witnesses have lost or destroyed whatever records they may have had and remember little of what occurred, and to consider such evidence without the benefit of findings of fact by the appropriate State court. If such findings were made, this court would ordinarily be able to accept the findings and to limit its hearing to questions of constitutional law.

\*

It is appropriate for the court to thank Mr. Cadigan for his able presentation of a difficult and unpleasant case, and to note that the representation of the Warden by Mr. Sweeney was in line with the reputation for ability and fairness which the office of the Attorney General of Maryland has long enjoyed.

\*

Petitioner is being held in violation of his constitutional rights and must be re-

leased from his present commitment. Counsel will prepare a proper order. The effectiveness of the order will be stayed for thirty days, to give the State an opportunity to retry the petitioner or to appeal. In either of those events, the Court will entertain a motion for a further stay.