## DOMNEYS *v.* STATE

[No. 180, September Term, 1961.]

*Decided July 24, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Fred E. Weisgal*, with whom were *Morris Lasover* and *Weisgal & Albert* on the brief, for the appellant.

*Robert C. Murphy, Assistant Attorney General*, with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City*, and *Charles E. Moylan, Jr., Assistant State's Attorney*, on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of rape and armed robbery, in a trial before the court and a jury, and sentenced to death. On appeal, three points are raised by counsel who represented the appellant below. These are: (1) that the trial court erred in admitting into evidence a statement made by the appellant to the police, in which he admitted the robbery but denied the rape, (2) that the conduct of the prosecuting witness was such as to render her failure to resist consent in law, and (3) that the evidence was legally insufficient to sustain the charge of rape. We find no merit in any of these contentions.

The statement given to the police, according to the testimony of the accused, was forced from him by police brutality, threats, and inducements. But the truth of his testimony was denied by each of the three arresting officers, so that the issue of credibility was for the triers of facts. Cf. *Hyde v. State*, 228 Md. 209, 224. There was legally sufficient evidence to support the charge of rape. According to the appellant's statement, the appellant and his companion, Calloway, had been drinking and decided to "get some money". They approached a car parked on Riggs Avenue about 11:45 P. M. on June 6, 1960. In the car were Miss Johnson and her friend, Trusty. They were hugging and kissing. The appellant and Calloway had a dagger and a pistol. Domneys entered the car at gunpoint and took $5.00 and a wrist watch from Trusty. One of them drove the car to a remote part of Druid Hill Park, while the other held the gun on Trusty. According to

the testimony of Miss Johnson, a high school graduate then 19 years old, Domneys took her into the bushes and placing a dagger or razor against her throat, told her to lie down and threatened to kill her if she resisted. He had intercourse with her, and thereafter they returned to the car and all drove back to Riggs Avenue. While the testimony of the prosecuting witness in a rape case need not be corroborated, *Doyal v. State*, 226 Md. 31, 34, there was considerable corroborative testimony, including her immediate complaint to relatives and the police, her hysterical condition, and the results of a medical examination which revealed the presence of spermatozoa in her vaginal canal. Failure to resist under the circumstances would not amount to consent, as a matter of law. Cf. *Merchant v. State*, 217 Md. 61, 70, and *Smallwood v. State*, 216 Md. 16, 17.

A supplemental brief, filed by other counsel, contends that the trial court committed reversible error in ruling, in chambers, that defense counsel would not be allowed to question Dr. Allen, the police doctor who examined Miss Johnson on the night of the rape, about possible sexual experiences of the prosecuting witness with Trusty on the night of the alleged rape. Dr. Allen testified, quite briefly, that an examination of Miss Johnson's vagina revealed spermatozoa, and that the condition of the outlet was marital. There was no suggestion, and no proffer, that Dr. Allen knew anything about the prosecutrix' acts of intercourse with anyone. Cf. *Baldwin v. State*, 226 Md. 409, 414. The defense could argue, of course, that the presence of spermatozoa would not prove that it came from Domneys, since it might have come from Trusty or someone else. But there was no testimony of prior intercourse on the night in question or at any time. According to Trusty and Miss Johnson, they were sitting in the car near her aunt's home, talking, although Domneys, in his statement but not in his testimony on the stand, said that they were hugging and kissing. The court's ruling did not preclude questioning of them as to sexual activities, and for present purposes we may assume, without deciding, that testimony as to recent intercourse would have been admissible as tending to

rebut the inference to be drawn from the presence of spermatozoa. But we find no reversible error in the ruling as to Dr. Allen.

Finally, newly appointed counsel contends that the appellant did not receive a fair trial because of the conduct of his court-appointed trial counsel. This contention is based on the fact that trial counsel, when Domneys took the stand, asked him if counsel had fully explained to him that it was his right to take the stand or to remain silent and the legal consequences, and whether his action was a voluntary election upon his part. Counsel further mentioned that he had been appointed by the court, and inquired whether the accused was satisfied with the services rendered and whether all the witnesses he requested had been contacted and summoned. All of these questions were answered in the affirmative. It is argued that the questions were improper and that their "necessary consequence * * * was an adverse reaction by layman jurors".

A careful reading of the record extract discloses that Domneys took the stand three times, once on the preliminary question for the court whether the statement he gave the police was voluntary, again when that same question was put to the jury, and finally when he took the stand on his own behalf. On the first two occasions he complained not only of physical abuse, but also that the police had refused to allow him to call his attorney, Mr. Meyers. (The police all denied that such a request had been made). On cross-examination he admitted that he had not asked for Mr. Meyers at the arraignment, and explained that this was because the civil case in which Mr. Meyers had previously represented him had "fizzled out", and he had no funds. He admitted that he had asked for court-appointed counsel. The questions now objected to were put to the accused when he took the stand in his own behalf.

The record is clear that the jury then knew that his trial counsel had been court-appointed, and that, according to his own testimony, he had desired another attorney. Taken in this context, the questions as to whether he was satisfied with the services rendered and whether counsel had contacted and summoned the witnesses he had asked for were not simply gratui-

tous and irrelevant to anything that had gone before even though they had no direct bearing upon the issue of guilt or innocence. Likewise, the questions as to the informed and voluntary nature of his election to take the stand on his own behalf, were not wholly irrelevant under the circumstances. Cf. *Nail v. State,* 328 S. W. 2d 836, 845 (Ark.). We think that these questions and answers were more likely to create a favorable impression upon the jury than otherwise. The fact that the defendant had made an informed and voluntary choice to take the stand and tell all, rather than to exercise his right not to take the stand and remain silent, could not well have produced an unfavorable impression. It was the subsequent cross-examination, which brought out the inconsistencies in his testimony and his prior criminal record, that was really harmful to his cause.

Since we find no prejudice in the asking of these questions under the circumstances above stated, we must reject the contention that by the asking of them the appellant was denied a fair and impartial trial under the due process clause of the Fourteenth Amendment.

*Judgment affirmed.*