Raymond **HARDING**, Petitioner,

v.

Major Hugh A. **LOGAN**, Jr., Odom Prison Farm, Respondent.

Civ. No. 1719.

United States District Court
E. D. North Carolina,
Raleigh Division.

Feb. 23, 1966.

Jack P. Gulley, Raleigh, N. C., for petitioner.

T. Wade Bruton, Atty. Gen., N. C., by Theodore C. Brown, Jr., Staff Atty., Raleight, N. C., for respondent.

LARKINS, District Judge:

## SUMMARY

This cause comes before the Court upon a petition for writ of habeas corpus, filed in forma pauperis by a State prisoner, pursuant to the provisions of Title 28 U.S.C.A. § 2254. Issues were joined upon respondent making answer and filing a Motion to Dismiss.

Petitioner insists that he has been denied his rights protected by the Federal Constitution in the particulars set out in his addendum to the petition for writ of habeas corpus and numbered (1) through (6) therein. He attempts to state these contentions by relying on testimony given at his trial, and which he supplements with factual allegations. These contentions relate to possible errors which may have been committed by the State Trial Court and they do not necessarily raise questions showing a denial of constitutionally protected rights. They have been properly reviewed by the Supreme Court of North Carolina, and upon such review, the Trial Court (Superior Court of Buncombe County, September–October 1964 Term) was found to have committed no error in the trial of the case. (See State v. Harding, 263 N.C. 799, 140 S.E.2d 244 (1965).)

Subsequent to the determination of this appeal to the Supreme Court of North Carolina, petitioner sought a Post-Conviction Hearing in the Superior Court of Buncombe County to review the constitutionality of his trial. His application for Post-Conviction Hearing is as inartfully drawn, as is his petition now before this Court, but one contention can be gleaned from both which has not been disposed of by the answer of the respondent, nor by the record as it now appears before this Court. In substance, it is petitioner's contention that the nature of the charges being brought against him were changed, and that the actual charges brought against him were altered in order to deny him the right to obtain medical testimony which was important to his defense. He further alleges, in support of this contention, that his court-appointed attorney did nothing about such changes and alterations even though petitioner requested him to do so.

On the basis of the above-stated situation, this Court granted petitioner a hearing, and appointed counsel to represent petitioner in such hearing.

During the course of the hearing, which was held in Raleigh, North Carolina, October 18, 1965 Term, another contention also developed and which is herein explored. This second contention is that petitioner was denied a fair trial in that he did not have a witness for him, namely, his employer, Mr. L. A. Lipe, Jr. Since petitioner's primary theory of defense was alibi, he insists this disinterested witness of good character and reputation would have helped establish his alibi, but that his attorney did not call him.

## FINDINGS OF FACT

Petitioner is presently incarcerated at the Odom Prison Farm in Jackson, North Carolina. He was tried at the September 1964 Term of the Superior Court of Buncombe County, North Carolina, on two separate criminal counts arising out of the same transaction. In Count No. 64–581, he was charged with assault with the intent to commit rape, and in Count No. 64–582, he was charged with the crime against nature.

Upon a plea of not guilty, and verdict of guilty by the jury after trial, peti-

tioner was sentenced in each count to a period of incarceration in the State's Prison System. The judgment of the Court was twelve years imprisonment on each count, directing that the sentences were to run concurrently.

Petitioner appealed his conviction to the Supreme Court of North Carolina, which, in a per curiam decision, determined no trial error had been committed. (See *State* v. *Harding*, supra.)

Petitioner was accused of committing the offenses charged on Saturday, July 18, 1964. He is supposed to have approached the older sister of the victim at about 9:00 a. m. as the two stood on a downtown Asheville, North Carolina, street corner. Petitioner introduced himself as Charles Thomas and asked if she would baby-sit for his two children while his wife worked, and he sought work. Paula Massey, the older sister, was employed and, therefore, refused. She suggested her younger sister, however, who is the victim, and gave petitioner a telephone number to call and told him to ask for Donna Massey, the younger sister.

Petitioner telephoned Donna Massey and employed her and directed her to a bus stop where he was to meet her. Petitioner met Donna Massey at the bus stop and then escorted her through a downtown park. The assault then followed, taking place in the park in a wooded and secluded spot. The victim was not raped and did not indicate such, although testifying that such was petitioner's stated intention.

The assault is said to have occurred shortly after 11:00 a. m. After being liberated, Donna Massey was able to return to her residence, which she did as quickly as possible under the circumstances, and related her experience to her grandmother. The County Sheriff's Department was then notified.

Sheriff's deputies immediately undertook an investigation and returned with Donna Massey to the scene of the crime to investigate further. No arrest was then made, the attacker not being known by the victim, but a witness was located who was able to identify petitioner.

On the following Thursday, July 23, 1964, petitioner, a painter, went to work with his employer, Mr. L. A. Lipe, Jr., riding in Mr. Lipe's truck. He worked from 8:00 a. m. to 4:30 p. m. Shortly thereafter, petitioner left the job site with Mr. Lipe and returned to Asheville with Mr. Lipe in the Lipe truck. This was a distance of some fourteen to sixteen miles distant.

Petitioner's residence was one block off the expressway, or route, Mr. Lipe took in returning to Asheville to his home. Mr. Lipe stopped on the expressway and petitioner disembarked in order to climb the fence separating the expressway from the property adjacent thereto, and petitioner states he then went home. On this particular day, petitioner was driven to the regular stopping point and disembarked as usual. The time was sometime between 5:00 and 5:30 p. m. Mr. Lipe, in his deposition suggested the time to be more near the midpoint, or 5:15 p. m. He did not see petitioner climb the fence or observe him go to his home because he was concentrating on re-entering the traffic moving on the expressway.

At about 5:30 p. m., Paula Massey testified that she saw petitioner in downtown Asheville some mile to mile and one-half from where petitioner disembarked from the Lipe truck. She tried to have him arrested but could not gain any assistance. Petitioner insists that by failing to call Mr. Lipe as a witness to testify in his behalf, his attorney did not properly and effectively represent him. This is so, he insists, because although the testimony of Mr. Lipe would not have directly established an alibi as to petitioner's whereabouts on the day of the offense, it could have created doubts as to Paula Massey's ability to identify him as the man she spoke to on the day of the offense, Saturday, July 18, 1964.

It is a fact that petitioner did not advise his attorney of Mr. Lipe or of the testimony he could give until after the trial had begun. The attorney elected not to subpoena him for rebuttal and im-

peaching purposes only at that late stage in the proceedings.

The Court observes that on Friday, July 24, 1964, at the hour of about 5:30 p. m., Paula Massey again saw petitioner in about the same area of downtown Asheville. On this occasion he was arrested and subsequently was positively identified by the prosecutrix, Donna Massey, as well as by Paula Massey and the other witness. He was then arrested and put in custody. His wife was present at this time.

On Saturday, July 25, 1964, at about 3:00 p. m., two warrants were read to petitioner. One warrant charged:

"Raymond Harding did unlawfully, wilfully and feloniously Assault, beat and wound one Donna Massey with the felonious intent to ravish and carnally know the said Donna Massey against her will and in spite of any resistance she might offer In violation of G.S. 14–22."

The companion indictment to the above stated warrant, which was found in Case No. 64–581, and which was entitled RAPE, states:

"That Raymond Harding * * * with force and arms, * * * did unlawfully, willfully and feloniously make an assault upon one Donna Massey and he, the said Raymond Harding did then and there beat, wound and ill-treat, with intent, her, the said Donna Massey violently and against her will, feloniously to ravish and carnally know, contrary to * * * statute * * *.

The second warrant read to petitioner states:

"Raymond Harding did unlawfully, wilfully and feloniously commit the abominable and detestable crime against nature upon the body of Donna Massey contrary to the form of the statute, * * *."

The companion indictment to this second warrant, and for the offense charged in Case No. 64–582 reads:

"That Raymond Harding, with force and arms, * * * did unlawfully,

wilfully and feloniously commit the abominable and detestable crime against nature with one Donna Massey against the form of the statute * *."

On September 30, 1964, petitioner's case was called for trial.

The Solicitor announced:

"Your Honor, I am calling #64–581 and #64–582. State vs. Raymond Harding. He is indicted for assault with intent to commit rape on Donna Massey in case #64–581. What is his plea?

"Mr. Styles: Not Guilty.

"Solicitor: In #64–582, he is charged with crime against nature, what is his plea?

"Mr. Styles: Not Guilty."

Upon an examination of the warrants, indictments and at the time of pleas, this Court fails to note any alterations of charges of material form, or of substance, which would bear upon the questions of evidence asserted by petitioner. This is especially true when his defense was based solely on the question of alibi.

The Mr. Styles referred to in the above quoted portions of the trial transcript is Mr. W. M. Styles, Attorney at Law, and practising member of the Buncombe County Bar. He testified that the warrants and indictments were fully explained to petitioner by him. He also states that he had ample time to prepare for the case; that he interviewed petitioner, his wife, other members of his family, and other witnesses who were named by petitioner. Mr. Styles elected to proceed to the defense of petitioner on the theory of alibi after he had examined the witnesses and petitioner. He pursued the theory of alibi intelligently and competently.

■ There does not appear to have been any attempt by the State to alter the form or substance of the charges against petitioner. Further, it does not appear that if there were any alterations, how such alleged alterations would have materially changed the conduct of petitioner's defense, or interfered with the development of the petitioner's defense.

Petitioner insists that alleged alterations enabled the State to proceed without using expert medical testimony, but he does not state how such expert testimony, or the lack of it, would bear upon his defense of alibi, or any other defense he might propose.

■ The Court is also convinced that the failure of petitioner's counsel to call, as an impeaching witness, a person that the attorney was not advised of until he was into the trial of the case, would not materially affect the outcome of the case or indicate an inadequacy on the part of counsel.

## CONCLUSIONS OF LAW

■ It is true that there can be errors so grave, when meeting the procedural requirements of the conduct of trials that relief by means of federal habeas corpus can be obtained. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). But, such errors must go to basic constitutional rights thereby denying a fair trial, and habeas corpus is not to be used as a means of mere review of claimed errors. Latham v. Crouse, 320 F.2d 120 (10th Cir., 1963). When attacking an indictment through a collateral proceeding, therefore, it must clearly appear that under no circumstances could a valid conviction result from the facts provable under the defective indictment. Morales v. Wilkinson, 283 F.2d 252 (5th Cir., 1960).

■ In this case the indictments sufficiently appraised petitioner and his counsel of the nature of the offenses, and they are similar in content and allegation to the warrants. See Larch v. Sacks, 290 F.2d 548 (6th Cir., 1961). The Court also observes that it has often been stated that an indictment or information is not to be reviewed by federal habeas corpus unless it is so fatally defective as to deprive the Court of jurisdiction. Underwood v. Bomar, 335 F.2d 783 (6th Cir., 1964); Loader v. Hand, 208 F.Supp. 915 (D.Kan.1962); and Johnson v. Walker, 199 F.Supp. 86 (E.D.La.1961) affirmed in 317 F.2d 418 (5th Cir., 1963).

Petitioner insists, however, that the defect in this case denied him the availability and use of expert medical testimony and the alterations alleged resulted in the suppression of this medical evidence. In this respect, the petitioner has not shown the Court that the alleged suppression occurred, or that if it did, that it was knowingly done and resulted in such fundamental unfairness of trial as to amount to a denial of due process of law. Powell v. Wiman, 287 F.2d 275 (5th Cir., 1961).

Petitioner fails to show how, or to what effect the alleged alterations occurred. He also fails to show to what effect the medical testimony would be upon the outcome of his case, or conduct thereof. There is nothing in this case to relate it to the situations revealed in either Smallwood v. Warden, Md. Penitentiary, 205 F.Supp. 325 (D.Md.1962); or in Powell v. Wiman, supra. In fact, petitioner's allegations of alterations are not substantiated. It further appears that the lack of the evidence petitioner claims would not bear upon the results of the case. See Kominski v. Anderson, 186 F.Supp. 404 (D.Del.1960) and Barbee v. Warden, Md. Penitentiary, 331 F.2d 842 (4th Cir., 1964).

In the Barbee case, supra, collateral relief was granted because the suppressed evidence tended strongly to exculpate a defendant. In that case, the suppressed evidence bore directly upon whether or not he could have committed the offense charged. No such showing appears nor is alleged in the case at hand.

■ As to petitioner's contention that the failure to call Mr. Lipe was an inadequacy of counsel so as to entitle him to relief, the Court observes that purported errors or omissions of counsel in the conduct of a case, when they relate to acts involving elements of discretion and judgment on which advocates might honestly disagree, are not subject to review by federal habeas corpus. United States ex rel. Robinson v. Pate, 312 F.2d 161 (7th Cir., 1963); Tompa v. Commonwealth of Virginia, 331 F.2d 552 (4th Cir., 1964); and Reeves v. Warden, Md.

Penitentiary, 226 F.Supp. 953 (D.Md. 1964).

### ORDER

Therefore, it is Ordered that the petition for writ of habeas corpus be, and the same is hereby denied.

It is further Ordered that respondent's Motion to Dismiss be, and the same is hereby allowed.