## CONTEE *v.* STATE

[No. 91, September Term, 1960.]

576

*Decided December 9, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James B. Davis,* with whom was *Victor L. Crawford* on the
brief, for the appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom
were *C. Ferdinand Sybert, Attorney General,* and *Leonard T.
Kardy, State's Attorney for Montgomery County,* on the brief,
for the appellee.

HORNEY, J., delivered the opinion of the Court.

The defendant (Gordon Leon Contee), a Negro, was in-
dicted, tried and convicted by a jury of raping a white woman,

and from the judgment and sentence entered on the verdict of guilty, he has appealed to this Court.

Since the defendant does not question the sufficiency of the evidence, a detailed statement of the facts and the attendant circumstances would serve no useful purpose. It will suffice to say that there was ample testimony, if believed, to convict the defendant despite his defense that the prosecuting witness had consented to the sexual intercourse which ensued after he had forcibly entered the apartment of the prosecutrix in the early morning hours of the day on which the offense was committed.

Three contentions are made by the defendant: (i) that it was reversible error for the trial court to refuse to ask prospective jurors, on *voir dire,* the questions he had submitted with respect to possible racial bias or prejudice; (ii) that it was error for the trial court to restrict his cross-examination of the arresting officer with respect to the memorandum (in the form of a notebook) used by the officer to refresh his recollection; and (iii) that it was prejudicial for the trial court not to grant the motion of the defendant for a mistrial in connection with certain alleged inflammatory questions and remarks asked or made by the State's Attorney with respect to the avowed propensity of the married defendant to have sexual intercourse with other women of both races. The pertinent facts concerning each of the contentions will be related as each is considered.

(i)

Immediately preceding the trial, the defendant, in moving the court to question the prospective jurors on their *voir dire,* submitted a list of eight questions he desired the court to ask. The court propounded the substance of the first question—whether or not the juror had any conscientious scruples against finding a verdict of guilty when the penalty could be death—as well as the substance of the second question—whether or not the juror had formed or expressed an opinion as to the innocence or guilt of the accused. Another question not requested by the defendant was also asked. But the court flatly refused to propound any of the remaining six questions. On this appeal, since the seventh question is not referred to,

the presumption is that it was abandoned and we shall not consider it further. The other five, all of which were apparently intended to ascertain the possible existence of cause for disqualification on account of racial prejudice, read, in pertinent part, as follows:

3. Whether any juror had ever "belonged to or been affiliated with any organization that had to do with segregation of the races?"

4. Whether any juror believed "in segregation?"

5. Whether any juror had "an opinion as to" the impropriety of "people of the white race" having "sexual intercourse with people of the colored race?" and if so "whether the opinion was adverse to the race" of the defendant, who was a Negro?

6. Whether any juror would "believe a woman of the white race over the statement of a man of the colored race?"

8. Whether any juror had "ever been involved personally or through close family association in any criminal matter" concerning "the prosecution of a colored man" for an act of violence?

When the court refused to question the first juror called on his *voir dire* with respect to possible racial bias or prejudice, counsel for the defendant approached the bench and the following colloquy took place:

(Mr. Davis) Is it my understanding that the court—

(Judge Lawlor) The court will deny the questions. I believe it has covered the proper questions by the three that were just asked.

(Mr. Davis) I do not, of course, believe argument in order, but I do think that the race problem would be in this particular case.

(Judge Lawlor) The court has considered it and denied the motion, so there is no need to fight the motion.

(Mr. Davis) You will enter the objection of the defendant to the court's ruling in the matter.

The defendant did not request the court to propound nor did the court of its own volition ask a general question designed to elicit the possible existence of prejudice.

Since we agree with the State's contention that none of the submitted questions was proper in that none was reasonably calculated to elicit or ascertain such bias or prejudice as would disqualify a prospective juror from rendering a fair and impartial verdict on the law and the evidence, it is unnecessary to discuss the shortcomings of the respective questions, though it may be observed that all appear to be examples of what not to request the court to propound to prospective jurors on *voir dire* in a case of this type which is likely to have aroused some racial feelings in the community where it is to be tried. But this is not the complete solution of the problem.

In *Brown v. State,* 220 Md. 29, 150 A. 2d 895 (1959), where the trial court refused to ask any questions on *voir dire* concerning racial bias or prejudice and as to whether the jurors could give the defendant, who was a Negro, as fair and impartial a trial as they could a white man, we held that "the failure to elicit from the jurors the essence of the information sought by the appellant was reversible error." See particularly *State v. Higgs,* 120 A. 2d 152 (Conn. 1956), quoted at length in the *Brown* case, as well as the other authorities therein cited, and compare *Glaros v. State,* 223 Md. 272, 164 A. 2d 461 (1960).

The argument of the State that the questions proposed by the defendant in the *Brown* case were proper, while those sought in the case at bar are improper, and that the defendant must stand or fall on the propriety of the questions actually submitted by the defendant in this case, cannot prevail. As we read the record, it is clear that the defendant was denied an opportunity either to frame additional *voir dire* questions which might have been proper or to request a general one concerning racial prejudices or feelings. Moreover, although it was fully apprised of the essence of what the defendant was seeking, the court failed to ask on its own motion, as it should have done, a proper question designed to ascertain the existence of cause for disqualification on account of racial bias or prejudice. From the demeanor of the court disclosed by

the colloquy between it and counsel at the bench, we are impelled to conclude—a conclusion confirmed by the opinion and order included in the record extract, which was filed by the trial court in denying the motion for a new trial—that the court had no intention of making any inquiry as to whether the jurors could or would set aside the feelings he or she might have as to racial differences and fairly and impartially decide the case solely on the evidence and the applicable law.

We hold that where, as here, a defendant is denied the opportunity of submitting or requesting proper questions relating to racial bias or prejudice to be propounded by the court to prospective jurors on *voir dire,* such denial constitutes reversible error.

Since the case must be reversed and remanded for a new trial, we shall examine the other two points raised on this appeal which might recur on the new trial.

(ii)

The first of the remaining questions concerns the restricting of the defendant's cross-examination of the arresting officer. On direct examination, the officer had used a notebook—which contained all of the notes concerning this case that he had made at the time of arrest or shortly thereafter—to refresh his recollection in order to answer a question as to what the defendant was wearing when arrested. On cross-examination, when the defendant was permitted to examine the notebook, as was his right, he asked the officer a question as to another entry totally unrelated to the description of the defendant's attire. Upon objection by the State, the trial court ruled that the defendant could cross-examine the officer only on that part of the memorandum he had used to refresh his memory as to the clothing.

The only claim of error was to the effect that once the memorandum was actually used, the defendant should have been allowed to cross-examine as to any part of its contents. No objection was made to the authenticity of the notes or the propriety of permitting the officer to use them. Nor did the defendant state any reason or inform the court why the unusual demand was made or why it was necessary or even ex-

pedient for the defendant to delve into all of the notes. The officer had testified fully as to other aspects of the case of which he had knowledge without the necessity of refreshing his recollection and he was thoroughly cross-examined as to such testimony. And there was no dispute as to the description of the clothing since the defendant frankly admitted, when he took the stand in his own behalf, that he was wearing the clothing which the officer had accurately described.

It may be—though we expressly do not now undertake to decide the point—that in some circumstances, if it be shown he has a valid reason for doing so, an adverse party might be entitled to cross-examine a witness with respect to all entries in a memorandum for all proper purposes of the defense. See the extensive annotation in 125 A.L.R. 19, wherein it appears that there is a split of authority as to the extent of cross-examination allowed to an adverse party on a memorandum used by a witness to refresh his recollection, and wherein Maryland, because of the holding in *Green v. Caulk,* 16 Md. 556 (1861), is classed (at p. 206) as one of those states where "counsel may inspect all the items contained in a memorandum used by the witness, whether they pertain to the point in controversy or not." But be that as it may, in the case at bar, where the record is incomplete, a question which should be answered has not been raised.

### (iii)

The last question relates to the refusal of the trial court to grant a mistrial. On the cross-examination of the defendant, the State's Attorney, after establishing that the defendant was married and the father of two children, asked him why he would have intercourse with the prosecutrix. The defendant replied that he not only had intercourse with the prosecutrix, but also with "other girls too," whereupon the defendant was interrogated further:

"Q. Other white girls? A. There have [*sic*] been one.

Q. How many other white girls do you have intercourse with?"

At this point counsel for the defendant interposed an objection, and, on the ground that the questions were "highly prejudicial and improper," moved for a mistrial. The trial court promptly sustained the objection, but denied the motion for a mistrial, and, which is more important, failed to caution the State's Attorney to desist from further questioning along that line or to admonish the jury to disregard the reference to racial matters. Later on, the prosecuting attorney unnecessarily and pointedly referred to the prosecutrix as a "white girl," and the court, in denying another motion for a mistrial, again failed to either reprimand the prosecutor or to advise the jury to disregard the unwarranted question. Apparently encouraged by the rulings of the court, the State's Attorney, in asking further questions, repeatedly referred to "white women" or "white girl." But in these instances, the defendant, perhaps because he realized the futility of doing so, not only failed to renew the motion for a mistrial in each instance, but also ceased to interpose further objections. Moreover, the record does not reveal that the court took any action at any time to restrain the State's Attorney.

While a court, having due regard to the rights of the accused and the State, may be justified in refusing to exercise its discretionary power to declare a mistrial except under urgent circumstances and for plain and obvious causes (*Lusby v. State*, 217 Md. 191, 141 A. 2d 893 [1958]), nevertheless, the court should not countenance or permit unwarranted and improper appeals to racial prejudice to be made or go unnoticed. See *Wood v. State*, 192 Md. 643, 65 A. 2d 316 (1949).

The remarks of a prosecuting attorney which are consistently forbidden are summarized in an extensive annotation in 45 A.L.R. 2d 303, where it was said at p. 306:

> "Statements or remarks of prosecuting counsel which are reasonably calculated to appeal to or evoke racial, national, or religious prejudice are universally condemned as violative of the right of one accused of crime to a fair and impartial trial."

In the same annotation, with respect to the duties of the trial

court where appeals to prejudice are made by a prosecutor, it was said at p. 314:

> "When an appeal to racial or religious prejudice is called to its attention 'it is the duty of the court to reprimand the prosecuting officer, sustain the objections and, if possible, make it clear to the jury that the Court does not condone the conduct of the prosecuting officer, and eradicate the same from the minds of the jury.'" [The internal quote is from *Gluck v. State,* 62 S. 2d 71 (Fla. 1952)].

See also 53 Am. Jur., *Trials,* § 996.

Since the case must be retried, it is not necessary to decide whether a mistrial should have been granted. We point out, however, that the State's Attorney has an obligation to refrain from making any remark within the hearing of the jury which is likely or apt to instigate prejudice against the accused. We further point out that, while the granting or refusal of a mistrial is a matter lying within the sound discretion of the trial court, the court, nevertheless, in addition to sustaining an objection to an improper remark or misconduct, is also entrusted with further responsibility to caution or reprimand the State's Attorney as the exigencies of the situation may require and to forthwith instruct the jury to disregard the unwarranted remarks and conduct of the prosecuting attorney.

For the reason first herein stated the judgment must be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded*
> *for a new trial; the costs to be paid*
> *by Montgomery County.*