HUMPHREYS *v.* STATE

[No. 84, September Term, 1961.]

*Decided December 5, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*Hamilton P. Fox, Jr.,* for appellant.

*Robert S. Bourton, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Alfred Truitt, Jr., State's Attorney for Wicomico County,* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Charles L. Humphreys, a Negro, was found guilty by a jury in the Circuit Court for Wicomico County of raping a white woman and was sentenced to a term of twenty years in the Maryland Penitentiary. In this appeal from the judgment and sentence he makes the following contentions: (1) that it was prejudicial error for the trial court to refuse to examine prospective jurors on *voir dire* as to possible racial prejudice in a case of this character, with the particularity requested by him; (2) that it was reversible error to refuse to allow his witness, Merrill Dashiell, to answer a question concerning the reputation of the prosecuting witness for having

associated with colored men; and (3) that the evidence was insufficient in law to sustain the conviction.

In view of the questions raised and our disposition of the case, it is unnecessary to set out in great detail the facts and attendant circumstances of the alleged crime. In brief, the prosecutrix charged that the automobile in which appellant was riding crowded her car off the road, that appellant (whom she did not know) forcibly entered her car and, after driving it into a wooded area, raped her after threats and physical violence. The appellant denied any use of force and contended that the prosecutrix voluntarily submitted to his advances. The jury's verdict shows that it rejected this defense. Other relevant facts will be mentioned in our discussion of the points raised.

(1)

It is settled law in this State that in a case where prejudice against the Negro race may be a factor in determining a prospective juror's attitude toward a particular defendant, the existence of such prejudice is a proper area of inquiry in the *voir dire* examination of the jurors. *Contee v. State,* 223 Md. 575, 165 A. 2d 889 (1960); *Brown v. State,* 220 Md. 29, 150 A. 2d 895 (1959). Where such inquiry is sought on *voir dire* examination and the trial court refuses to ask questions of the jurors directed toward this end, we have held that this "failure to elicit from the jurors *the essence* of the information sought by the appellant was reversible error". (Emphasis added.) *Brown v. State, supra,* at p. 36.

Appellant submitted to the trial court seven questions pertaining to racial bias to be asked in the *voir dire* examination. Of these, the trial court permitted the four following to be propounded to each prospective juror:

> "Can you, without bias or prejudice, pass your verdict in this case solely on the evidence produced from the witness stand without regard to the race, creed or color of the defendant?
>
> "Do you feel that the fact that the defendant and the prosecuting witness are of different races justifies that the case should be considered as different from

one wherein the defendant and the prosecuting witness are of the same race?

"Have you any prejudice against the Negro as a Negro that would induce you to return a verdict on less or slighter evidence than you would return a verdict of guilty against a white man under the same circumstances?

"Can you give the defendant, who is a Negro, as fair and impartial a trial as you could a white man, and give him the same advantage and protection as you would a white man upon the same evidence?"

The trial court refused to permit the asking of the three remaining questions, which were directed specifically to the crime of rape, and the situation where a colored man is charged with that offense against a white woman. These questions were:

"Do you feel that a case wherein a colored man is charged with rape of a white woman should be considered as different from a case wherein a white man was charged with the rape of a colored woman?

"Would you return a verdict of guilty on less or slighter evidence in a case where a colored man is charged with the rape of a white woman than you would in a case where a white man was charged with the rape of a colored woman?

"Would you return a verdict of guilty on less or slighter evidence in a case where the charge was rape and the defendant was of a different race than the prosecuting witness than you would in a similar case where the defendant and the prosecuting witness were of the same race?"

It is the essence of the appellant's argument that it is not enough for a trial court to recognize and explore the possibility of racial prejudice on the part of jurors, but that in a case involving the rape of a white woman, charged to one of the Negro race, it should be further recognized that such bias or prejudice is likely to be greater. Appellant therefore

maintains that the possibility of having jurors who, although having no bias or prejudice against Negroes generally, would have sufficient bias or prejudice to convict a Negro of raping a white woman on less or slighter evidence than that upon which they would convict a white man of raping a Negro woman under similar circumstances, is not so remote as to justify the trial court's failure to ask the three questions pointed toward this cause for disqualification, and thus, he claims, the trial court's failure to do so constituted prejudicial error.

Whether, in a proper case, a trial court is under any duty to question a juror as appellant would have had it do, is not a question which we must answer in the present case. It is evident from the record that the members of the jury panel were well apprised of the fact, *before* any questions were propounded to them on *voir dire,* that the case about to be tried involved a charge of rape against the defendant. The transcript shows that just before the *voir dire* examination of the prospective jurors began, the clerk asked the prisoner to stand and, in the presence of the veniremen, announced:

> "You, Charles Humphreys, now prisoner at the bar, hear what is said to you; these ladies and gentlemen that have been called are those that shall pass between the State of Maryland and you upon your *trial for rape,* assault with intent to rape, and assault. If therefore you would challenge them or any of them you must do it as they come to be sworn, before they are sworn, and you will be heard." (Emphasis supplied.)

Following this came the *voir dire* examination itself. From the substance of the questions which the trial court did ask in regard to racial prejudice, including the reference in the questions to the fact that the appellant and the prosecuting witness were of different races, and the two hypothetical questions dealing with "a white man", the jurors could not fail to understand (if they did not, in fact, know it previously) that the case involved the rape of a white woman by a Negro defendant.

In this State there is no statute or specific rule prescribing the questions which should be asked in determining the eligibility of a juryman, but the subject is left largely to the trial court's sound discretion. The trial court should, in the exercise of its discretion, adapt the questions as the needs of the particular case dictate in the effort to obtain an impartial jury. *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955). We think that, in the setting disclosed by the record of the case at hand, the appellant was furnished a jury shown by their examination to be qualified to give him a fair trial. We find no abuse of discretion by the trial court in this respect. We therefore hold that under the circumstances presented in this case, the questions which were propounded by the trial court did in essence elicit from the jurors the information sought by the appellant in regard to racial bias, and that no prejudice resulted to appellant from the exclusion of his other questions. Cf. *Contee v. State, supra; Glaros v. State,* 223 Md. 272, 164 A. 2d 461 (1960); *Lee v. State,* 164 Md. 550, 165 Atl. 614 (1933); *Preston v. State,* 242 S. W. 2d 436 (Tex. Crim. App. 1951); *Commonwealth v. Lee,* 88 N. E. 2d 713 (Mass. 1949); *State v. Bethune,* 67 S. E. 466 (S. C. 1910); Note, 54 A.L.R. 2d 1210.

(2)

We turn now to the question whether or not the witness, Merrill Dashiell, should have been permitted to answer a question pertaining to the reputation of the prosecuting witness for having associated with colored men.

It is well established that there is no requirement that the victim of the crime of rape be chaste, as far as the common law is concerned. "But the law of England * * * holds it to be felony to force even a concubine or harlot." 4 *Blackstone, Commentaries* 213. See also *Brown v. State, supra; State v. Beltz,* 279 N. W. 386 (Iowa 1938); *Perkins, Criminal Law,* Chap. 2, p. 116. However, the general character of the prosecutrix as to chastity or unchastity is admissible in the majority of common law jurisdictions, including Maryland, because of its probative value in determining whether the act was committed with or without her consent, a necessary ele-

ment in the common law crime of rape. *Shartzer v. State,* 63 Md. 149 (1885) ; *Brown v. State,* 72 Md. 468, 20 Atl. 186 (1890). See also 140 A.L.R. 380 and 1 *Wigmore, Evidence* (3rd ed.) § 62. The appellant cites this rule in alleging error on the part of the trial court in its refusal to allow the witness to answer the disputed question.

The appellant first points to the sharp conflict on the question of consent between the testimony of the appellant and that of the prosecutrix, as well as to certain conflicting statements made by two State's witnesses (occupants of the car in which appellant had been riding), who had witnessed the stopping of the woman's car and its entry by appellant, as to whether force had been used. Appellant then urges that because of this conflict it was extremely important to establish the general reputation of the prosecutrix as to chastity or unchastity for the light it would shed in determining whether the prosecutrix had consented to the intercourse.

While the reasoning of the appellant may be sound, in our opinion there was no error on the part of the trial court in refusing to permit the witness to reply to the question propounded by defense counsel. That question was: "Let me ask you this, Merrill. Does this woman have a reputation for associating with colored men?" After the State's objection was sustained, counsel did not pursue this line of questioning any further.

We are unable to discern the relevancy of the question as propounded in determining the reputation of the prosecutrix as to chastity. It surely cannot be argued that the fact, if shown, that the prosecutrix had a reputation for associating with colored men, would give rise to a compelling—or indeed any— inference that she was unchaste. Appellant has not cited, nor have we found, any case or other authority which would tend to indicate the admissibility of a question of such remote (if any) probative value as the one in question. The reasoning in *Shartzer v. State, supra,* that evidence of specific acts intended to show the immorality of the prosecutrix is inadmissible because it would tend to open up a number of collateral issues as to which the prosecutrix might be wholly unprepared to answer, can be applied with equal force in the matter before

us. To permit evidence as far afield as reputation for mere association with other men in determining a woman's reputation with respect to chastity would be to go further than any case that has come to our attention. Cf. *People v. Mangum*, 88 P. 2d 207 (Calif. 1939); *Ledesma v. State*, 181 S. W. 2d 705 (Tex. Crim. App. 1944); *Byrd v. State*, 200 S. E. 671 (Ga. 1938); *State v. Taylor*, 35 S. E. 729 (S. C. 1900).

It is noted that the appellant failed to follow up the disputed question with one that would have been admissible as to the reputation of the prosecutrix for chastity, nor did he make a proffer of what he intended to establish by the objectionable question. Under the circumstances, we find no error in the ruling of the trial court.

(3)

The appellant's contention as to the sufficiency of the evidence has a fatal flaw. The record shows, and the appellant conceded at oral argument, that no motion for a directed verdict was made at any stage of the trial. "Under Art. XV, Sec. 5 of the Constitution of Maryland, Code (1957), Art. 27, Sec. 593, and Maryland Rule 738, appellate review of the sufficiency of the evidence in a criminal case before a jury is predicated entirely upon the refusal of the court to grant a motion for a directed verdict of not guilty. In the absence of such a motion below, 'there can be no review of the sufficiency of the evidence.' *Auchincloss v. State*, 200 Md. 310, 315 * * *." *Ledbetter v. State*, 224 Md. 271, 273, 167 A. 2d 596 (1961).

In fairness to appellant's counsel, who has been most diligent in conducting the defense of the accused, it is likely that had the question of the sufficiency of the evidence been properly preserved the result would not have been different. The verdict of the jury would seem to be amply supported by the testimony of the prosecutrix, together with the persuasive corroboration afforded by the testimony of the doctor who described the condition of the victim shortly after the offense had been committed, including the fact that she exhibited bruises that correlated with her testimony as to the blows and other physical injuries she had suffered, and the fact that she made an immediate complaint to the State Police, in a hysteri-

cal condition. Cf. *Doyal v. State,* 226 Md. 31, 171 A. 2d 470 (1961).

Having found no error below, we must affirm.

*Judgment affirmed.*