501 A.2d 76

**Derrik O. HOLMES**

v.

**STATE of Maryland.**

**No. 237, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 6, 1985.

**430**

Isaac S. Kershner, Assigned Public Defender (Alan H. Murrell, Public Defender on brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty., for Prince George's County and William T. Shockley, Asst. State's Atty., for Prince George's County on brief, Upper Marlboro).

Submitted before BELL (ROSALYN B.) and BELL (ROBERT M.), JJ., and GETTY, (JAMES S.), Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

BELL, ROBERT M., Judge.

Roswel C. Howard, a christmas tree salesman, who is white, was shot four times during a robbery. He identified Derrik O'Brien Holmes, appellant, a black professional boxer and his former assistant, as his assailant. Appellant was arrested and charged in a seven count indictment with, among other offenses, assault with intent to murder (Count 1), attempted murder (Count 2), robbery with a deadly weapon (Count 4) and use of a handgun in the commission of a crime of violence (Count 7).

Trial proceeded before a jury in the Circuit Court for Prince George's County. After all evidence had been presented, the State nolle prossed Count 1, assault with intent to murder. Thus, that count was not submitted to the jury for decision. The jury returned verdicts of guilty of attempted first degree murder, robbery with a deadly weapon, and use of a handgun. Having been sentenced to life imprisonment with all but thirty-five years suspended, for attempted first degree murder and to concurrent sentences for the remaining convicted counts, appellant appeals, directing our attention to two assignments of alleged error:

1.  The Court's exclusion of jury *voir dire* questions requested by him deprived him of a fair trial; and

2.  The sentence that was imposed for the conviction of attempted murder was illegal.

## I.

Appellant submitted 54 questions which he requested the trial judge to propound to the jury panel on its *voir dire*. Two of these questions [1] related to the existence of racial prejudice and seven [2] related to the existence of prejudice

---

**1.** The requested voir dire questions were:

> "No. 35. Do you have any fixed opinion about black people which would prevent you from giving a fair and impartial verdict in this case based soley upon the law and evidence?"

> and

> "No. 36 Will you fairly try this case, if elected to serve, solely upon the basis of the law and evidence and totally disregard the defendant's race?"

**2.** No. 25. Would the fact that a Defendant is a boxer make you more likely to believe he is the type of person who would commit an assault and battery?

No. 48. Did you know the Defendant, DERRIK O'BRIEN HOLMES, was an amateur boxer?

arising because of appellant's occupation as a boxer. No questions were propounded as to possible racial prejudice. Notwithstanding his failure to object or except to this omission, appellant asserts on appeal that the court's "failure to make at least some inquiry directly as to the existence of ethnic/racial prejudice" constitutes reversible error. Although the trial judge propounded a question regarding possible prejudice because of occupation,[3] appellant, being concerned that it was not "elaborated upon," sought unsuccessfully to have the trial judge ask the question in more detail. He urges here that the trial judge's failure to do so was error.

It is well settled in Maryland that interrogation of venireman with respect to racial prejudice is required on request,

(1) where racial prejudice may be a factor because of the facts of the case, but

---

No. 49. Would this fact influence your ability to render a fair and impartial verdict in this case?

No. 50. Did you know the Defendant, DERRIK O'BRIEN HOLMES, was a professional boxer?

No. 51. Would this fact influence your ability to render a fair and impartial verdict in this case?

No. 52. Did you know that the Defendant, DERRIK O'BRIEN HOLMES, fought as a professional boxer for the world's junior featherweight championship against Wilfredo Gomez on 22 August 1980 in Las Vegas, Nevada and that the bout was televised on national television?

No. 53. Would this fact, in and of itself, influence your ability to render a fair and impartial verdict?

**3.** The court asked: You will hear evidence in this case that the defendant was a professional boxer. Would that evidence interfere with your ability to render a fair and impartial verdict based solely on what you hear in this courtroom?

    (2) no specific question or procedure is compelled so long as the "essence" of the information sought as to prejudice is inquired into.

*Thornton v. State,* 31 Md.App. 205, 214, 355 A.2d 767 (1976). *See also Brown v. State,* 220 Md. 29, 150 A.2d 895 (1959); *Contee v. State,* 223 Md. 575, 165 A.2d 889 (1960); *Humphreys v. State,* 227 Md. 115, 175 A.2d 777 (1961); *Smith & Nelson v. State,* 12 Md.App. 130, 277 A.2d 622 (1971); *Tunstall & Alton v. State,* 12 Md.App. 723, 280 A.2d 275 (1971).

    Illustrative of the latter point is *Contee.* There, all of the defendant's submitted *voir dire* questions were improper "in that none was reasonably calculated to elicit or ascertain such bias or prejudice as would disqualify a prospective juror from rendering a fair and impartial verdict on the law and the evidence." *Id.* [223 Md.] at 580, 165 A.2d 889. Noting that the court "was fully apprised of the essence of what the defendant was seeking, [yet] failed to ask on its own motion, as it should have done, a proper question designed to ascertain the existence of cause for disqualification on account of racial bias or prejudice," the Court of Appeals held:

    ". . . where, as here, a defendant is denied the opportunity of submitting or requesting proper questions relating to racial bias or prejudice to be propounded by the court to prospective jurors on *voir dire,* such denial constitutes reversible error."

*Id.* 223 Md. at 581, 165 A.2d 889.

    ■ Concerning the requirement that racial prejudice be a factor in the case, we acknowledge that simply because the victim of the crime is white and the defendant is black does not *constitutionally* mandate that veniremen be questioned specifically about racial prejudice. *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1973). There, in a

state criminal trial for various crimes perpetrated against a white security guard, Ross, a black, sought to have the court propound to the veniremen a question directed at racial prejudice. The court refused, finding that no purpose would be served by asking such a question. The Supreme Court agreed, stating:

> The Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him. *Ham [v. South Carolina,* 409 U.S. 524, 527–528, 93 S.Ct. 848, 850–851, 35 L.Ed.2d 46 (1973)]. *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Connors v. United States,* 158 U.S. 408, 413, [15 S.Ct. 951, 953, 39 L.Ed. 1033] (1895); *see Ham, supra,* [409 U.S.] at 527–528, 93 S.Ct. at 850–851]; *Aldridge v. United States,* 283 U.S. 308, 310 [51 S.Ct. 470, 471, 75 L.Ed. 1054] (1931). This is so because the "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *Rideau v. Louisiana,* 373 U.S. 723, 733 [83 S.Ct. 1417, 1423, 10 L.Ed.2d 723] (1963) (Clark, J., dissenting). Thus, the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant. *Ham, supra.* [409 U.S.] 527–528 [93 S.Ct. 850–851].

*Id.* at 594–95, 96 S.Ct. at 1020–21. (footnote omitted). The Court went on to recognize, as it had in *Ham, supra* "that some cases may present circumstances in which an impermissible threat to a fair trial guaranteed by due process is posed by a trial court's refusal to question prospective jurors specifically about racial prejudice during *voir dire*". *Id.* at 595, 96 S.Ct. at 1021. Such factors in *Ham* were: (1) the defendant was a well-known civil rights activist and (2)

his defense was that he had been framed for his civil rights activities.[4]

██ Thus it is that Maryland's requirements relating to *voir dire* on racial prejudice appear to be consistent with the constitutional mandate explicated by *Ristaino*. Both hold "that whatever the ethnic background of the accused, he or she is not entitled to promiscuously probe for racial prejudice absent circumstances in the case warranting such inquiry." *Thornton*, 31 Md.App. at 216, 355 A.2d 767. But the circumstances which warrant the inquiry need not be identical. The Supreme Court recognized that,

> Although we hold that *voir dire* questioning directed to racial prejudice was not constitutionally required the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant.

and that

> "The States ... are free to allow or require questions not demanded by the Constitution."

*Ristaino*, 424 U.S. at 597, n. 9, 96 S.Ct. at 1022, n. 9. The Court of Appeals recognized that this is so in *Brown, supra. See Thornton*, 31 Md.App. at 214, 355 A.2d 767, where we said, "... had the Court of Appeals considered *Aldridge binding* under the Fourteenth Amendment, there would have been little need to cite authority from the State of Connecticut to bolster its holding in *Brown.*" (emphasis in the original).

We turn now to a consideration of the circumstances which have been found to require *voir dire* questions on racial bias in Maryland. In *Brown*, the defendant, who was black, shot and killed a white police officer. Without discussing any specific factors for doing so, but relying on

---

4. Ham was charged with and convicted of possession of marijuana, a charge which does not involve violence or victimization of another person. Such a charge ordinarily does not present a risk that racial prejudice will affect its outcome. Ham's civil rights activities introduced into the case the possibility of racial bias generated by those activities, which could be uncovered only through voir dire specifically addressing that issue.

*State v. Higgs,* 143 Conn. 138, 120 A.2d 152 (1956), the Court of Appeals concluded that "[t]he refusal to ask any questions as to the bias or prejudice which jurors might have as to a Negro, and as to whether the jury could give the defendant as fair and impartial a trial as they could a white man, falls into a different category [than questions regarding pre-trial publicity and jury connection with counsel] requiring more consideration." *Brown,* 220 Md. at 34, 150 A.2d 895. One of the portions of the *Higgs* decision quoted by the Court was:

> "We cannot be blind to the fact that there may still be some who are biased against the Negro race and would be more easily convinced of a Negro's guilt ... than they would of a white man's guilt. ...
>
> "So long as race prejudice exists, even in a relatively few persons, there is a substantial chance that one of those few will appear in court as a venireman. Consequently, the fact that most people in the state are not prejudiced against Negroes is not of controlling importance."

*Higgs,* 120 A.2d at 154–55. In *Contee,* the black defendant was accused of raping a white woman. Again, the Court did not focus upon any specific factors as rendering this case one in which the veniremen should be *voir dired* as to racial bias. It did suggest, however, that the rape of a white woman by a black man was likely to cause "some racial feelings in the community where it is to be tried." 223 Md. at 580, 165 A.2d 889. Similarly, aside from the race of the victim and the defendant and the nature of the charge, again the rape of a white woman by a black man, *Humphreys, supra,* provides no additional insight.

The cases from this Court have provided assistance, albeit limited, in determining what special circumstances would warrant *voir dire* inquiry into racial bias. In *Smith and Nelson,* an armed robbery case, in which we found reversible error because the court refused to ask the jury panel, "[w]ould the fact that the accused is a Negro or black, affect the ability to pass fairly on the innocence of the

accused?'', we specifically declined to accept geographical location in the State as a factor.

*Tunstall and Alton* was also an armed robbery case. Relying on *Smith and Nelson,* we found that the trial judge abused his discretion by failing to cover in the *voir dire* the subject of racial prejudice. Where, however, the defendant, the victim, and the witnesses in the case were of the same race, we found that "there was no possibility that racial bias would influence the outcome...." *Thornton,* 31 Md.App. at 217, 355 A.2d 767. Although recognizing in *Thornton* that special circumstances warranting *voir dire* as to racial bias must exist before such examination is mandated, we never clearly defined of what these circumstances consist.

▆▆ Even when the circumstances warrant inquiry into the racial bias of the veniremen, not all questions submitted by a defendant on the subject need be asked, *Humphreys,* 227 Md. at 118–121, 175 A.2d 777; nor must a specific question be asked if a general one fairly covers the subject. *Glaros v. State,* 223 Md. 272, 276, 164 A.2d 461 (1960) ("We think the general question as to bias against any race, creed or nationality eliminated the need to ask the specific question as to possible prejudice against a Greek"). All that is required is, when the issue is properly presented, "the essence of the information sought by the appellant" must be elicited from the jury panel. *Brown,* 220 Md. at 36, 150 A.2d 895.

▆▆ Our review of the cases causes us to conclude that, in a criminal case, prejudice may be a factor because of the facts of the case when the complainant and the witnesses for the State[5] are of a different race than the defendant, and the crime involves victimization of another person and

---

5. It is not always the case that the defendant is black and the victim, white. As the late Judge Lowe of this Court said, "... the right to question prospective jurors as to racial prejudice is not unique to the black defendant." *Thornton,* 31 Md.App. at 216, 355 A.2d 767. *See e.g. Glaros v. State,* supra.

the use of violence. Therefore, the issue of racial prejudice was fairly generated in the case *sub judice.* Both the Court of Appeals and the Supreme Court have recognized the necessity of *voir diring* a jury panel as to racial bias. *Brown,* 220 Md. at 36, 150 A.2d 895. ("Unless bias is inquired into beforehand, its existence ordinarily will not become known since the verdict cannot be impeached."), *Aldridge v. U.S.,* 283 U.S. 308, 314, 51 S.Ct. 470, 473, 75 L.Ed. 1054 (1931) ("[W]e do not think that it can be said that the possibility of [racial] prejudice is so remote as to justify the risk in forbidding the inquiry. And this risk becomes most grave when the issue is of life or death.") *See also Ristaino,* 424 U.S. at 597–98, nn. 9 & 10, 96 S.Ct. at 1022 nn. 9 & 10, in which the Supreme Court, discussing its holding that the Constitution did not require the inquiry, observed that "under our supervisory power we would have required [an inquiry into racial bias] . . . of a federal court faced with the circumstances here," and that ". . . the actual result in *Aldridge* should be recognized as an exercise of our supervisory power over federal courts." Consequently, questions pertinent thereto when properly presented should have been asked on *voir dire.*

■ The State appears not to dispute that inquiry into racial prejudice should have been made; rather, it contends, relying on *Calhoun v. State,* 297 Md. 563, 468 A.2d 45 (1983) and *White v. State,* 300 Md. 719, 481 A.2d 201 (1984) that appellant waived the error when, not having objected or excepted to the court's failure to so inquire, he expressed satisfaction with the jury impaneled. *Calhoun* and *White* involved allegations by defendants that their rights to exercise preemptory challenges were impaired by the court's denial of their motions to strike potential jurors for cause. In each, the Court of Appeals found waiver when the defendant expressed satisfaction with the jury impaneled prior to its being sworn. The State says that appellant's failure to object, coupled with his expressing satisfaction with the jury impaneled, is a comparable situation which mandates the same result.

Notwithstanding, our belief that the trial judge's failure to *voir dire* the jury panel as to racial bias was error, we are constrained, in light of *Calhoun* and *White*, to agree with the State that appellant waived that error.

As to appellant's contention that the court erred in refusing to elaborate upon its question pertaining to appellant's occupation, not only was this issue also waived, but the question propounded by the court was sufficient to elicit the "essence of the information sought."

## II

Appellant next contends that his sentence for attempted murder in the first degree is illegal.[6] He reasons that assault with intent to murder, the "flagship crime" of the indictment pursuant to which he was tried, carries a maximum penalty of only thirty years;[7] thus, that maximum penalty constitutes a cap on the sentence he could receive for attempted murder,[8] an offense carrying a greater maximum penalty than, but, one which, nevertheless, is a lesser included offense of, assault with intent to murder. We agree.

*Hardy v. State,* 301 Md. 124, 482 A.2d 474 (1984), the case on which the State relies to support its argument that the maximum penalty for an attempted murder charge is not determined by the maximum penalty for assault with

---

6. Although not objected to or raised below, issues pertaining to an illegal sentence may nevertheless be raised for the first time on appeal. *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949 (1985).

7. Md.Code Ann. art. 27, § 12 provides in pertinent part:
   "Every person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 30 years."

8. Md.Code Ann. art. 27, § 644A provides:
   "The sentence of a person who is convicted of an attempt to commit a crime may not exceed the maximum sentence for the crime attempted."
   Murder in the first degree carries a maximum sentence of death or life imprisonment. Art. 27, § 412(b).

intent to murder, involved the issue whether, for the purposes of adult jurisdiction over a juvenile, the two crimes are the same. It was in this context that the Court noted:

"In this case, Hardy was charged only with attempted murder, and thus no question of merger arises. Consequently, upon conviction he would be subject to the maximum penalty for that offense,"

*Id.* at 134, 482 A.2d 474, and then held:

"... that the maximum punishment for attempted murder is not determined by the maximum punishment for assault with intent to murder."

*Id.* at 135, 482 A.2d 474. The Court did acknowledge, however, that assault with intent to murder is the same as attempted murder except that assault with intent to murder requires a greater degree of proximity.[9] *Id.* at 130, 482 A.2d 474, quoting R. Perkins, *Criminal Law* 578 (2nd ed. 1969). Thus, attempted murder is a lesser included offense of assault with intent to murder. *Id. See Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984), *Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978), *Slye v. State,* 42 Md.App. 520, 401 A.2d 195 (1979). *Cf. Walker v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982).

In *Simms v. State,* 288 Md. 712, 724, 421 A.2d 957 (1980), the Court of Appeals held:

... [W]hen a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge.

---

**9.** Perkins set out one additional element, not here relevant, differentiating assault with intent to murder from attempted murder: "actual present ability to commit a battery." He pointed out that this element only applies in states which have added it to its statutory definition of assault.

Therefore, twelve year sentences imposed for assault convictions after jury acquittals as to 10 year maximum assault with intent to rob charges were vacated. *See Also Gerald v. State, supra.*

■ In the case *sub judice,* after all the evidence had been presented and just prior to submission of the case to the jury, the State nolle prossed the assault with intent to murder charge. At that time, jeopardy had attached and the nolle pros operated as an acquittal. *Bynum v. State,* 277 Md. 703, 705, 357 A.2d 339 (1976). Under *Simms,* the flagship crime being assault with intent to murder, although attempted murder in the first degree was being charged, the maximum penalty that could be imposed was thirty years. A sentence of life imprisonment with all but thirty-five years suspended is illegal.

Our conclusion is not affected by *Walker v. State, supra.* There, appellant alleged, "that the very appearance of the aggravated assault charge in the case served, . . ., to establish an upper limit upon the penalty available for the attempted rape[.]" This Court, noting that "the more specific crime . . . determines the upper limit on punishment when there is a merger and even in a non-merger situation as in *Simms,* where jeopardy attaches on both the general and specific crimes," 53 Md.App. at 191, 452 A.2d 1234, held that assault with intent to rape "had no limiting effect upon the penalty for attempted first-degree rape." 53 Md.App. 192, 452 A.2d 1234. We obeserved along the way: "If what were before us was attempted rape generally, we would be hard-pressed not to agree with the appellant." 53 Md.App. at 191, 452 A.2d 1234. First, unlike the *Walker* Court, we do not find significant the fact that appellant in this case was charged with attempted murder in the first degree, rather than attempted murder generally. Second, *Walker* is distinguishable in any event.

In the instant case attempted murder was charged pursuant to the statutory formula in Md.Code Ann. art. 27 § 616 for charging murder. Under that formula, "even though it spells out murder in the first degree, the accused may be

convicted of murder in the first degree, of murder in the second degree, or of manslaughter." *State v. Ward,* 284 Md. 189, 200 (1978). *See Hardy,* 301 Md. at 138. "The crime of attempt by definition expands and contracts and is redefined commensurate with the substantive offense." *Hardy,* 301 Md. at 139–40. Thus, in this case, because appellant could have been convicted under the attempted murder count of the indictment of attempted murder in the first degree or attempted murder in the second degree, the indictment, in effect, charged both attempted murder in the first degree *and* attempted murder in the second degree. *See Gerald v. State, supra.*

AS TO ROBBERY WITH A DEADLY WEAPON AND USE OF A HANDGUN, JUDGMENTS AFFIRMED.

AS TO ATTEMPTED FIRST DEGREE MURDER, CONVICTION AFFIRMED; SENTENCE IS VACATED AND REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR RESENTENCING.

COSTS TO BE PAID ONE-HALF BY PRINCE GEORGE'S COUNTY, ONE-HALF BY APPELLANT.