661 A.2d 1164

**Andrew HILL**

**v.**

**STATE of Maryland.**

**No. 92, Sept. Term, 1994.**

Court of Appeals of Maryland.

July 21, 1995.

Devy Patterson Russell, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

BELL, Judge.

This case requires that we revisit the issue of when, and define the circumstances under which, at the request of the defendant, *voir dire* in a criminal case must include a question regarding racial bias or prejudice. In line with what this Court consistently has held, most recently in *Davis v. State,* 333 Md. 27, 34, 633 A.2d 867, 871 (1993), to be the overarching

purpose of the *voir dire* examination—"to ascertain 'the existence of cause for disqualification ...' ", *id.,* quoting *McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959) (quoting *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952) (citations omitted))—we shall hold that under the circumstances of the case *sub judice,* the trial court should have inquired, as requested, into the *venire's* racial bias. Accordingly, we shall reverse the judgment of the Court of Special Appeals, which, in an unreported opinion, reached the opposite conclusion.

## I

The State's only witness at trial was Barron N. Burch, a Baltimore City police officer. He testified that, while on armed robbery detail, he responded to the 2100 block of Booth Street, in answer to a call for a black male, wearing a black jacket and blue jeans, armed with a gun. When he arrived at that location, Officer Burch stated that he saw Andrew Hill, the petitioner. Observing that he matched the description he had been given, the officer approached the petitioner, placed him against the police cruiser Officer Burch was driving, and conducted a pat down search of the petitioner's clothing. He did not thereby discover a gun. Subsequently, however, the officer noticed that the petitioner was holding a box, inscribed with the word, "Dominoes." Despite the petitioner's express confirmation that the box did, indeed, contain Dominoes, Officer Burch took the box from the petitioner, opened it, and recovered 14 vials of cocaine.

The petitioner was charged with cocaine possession offenses. He elected to be tried by a jury. The petitioner being African–American and Officer Burch Caucasian, the petitioner requested the Circuit Court for Baltimore City to propound the following question during the *voir dire* examination of the *venire:*

You have taken note, the defendant is African/American. Both sides to this case, and certainly the court want to make it abundantly clear to you that the racial background of the defendant is not to be considered against him in any way.

It is imperative that the defendant be judged only upon the evidence or lack of evidence, without any regard whatever to whether he is African/American or white. If there is in your background any experience, or attitude, or predisposition, or bias, or prejudice, or thought that will make it more difficult for you to render a verdict in favor of this defendant because of his race, then I ask that you raise your hand.

The trial court refused to ask the question. It did ask, however, whether any member of the jury panel "knew of anything that would keep her or him from giving a fair and impartial verdict," and "whether any member knew of any reason why he or she should not serve on the jury."

The jury having returned a guilty verdict as to both the possession and possession with intent to distribute cocaine charges, the petitioner, relying on the *voir dire* issue, among others, filed an appeal with the Court of Special Appeals. That court affirmed the judgment of the trial court. With respect to the *voir dire* issue, it relied on its prior holding "that a court may be required to question jurors regarding racial bias where 'the complainant and the witnesses for the State are of a different race than the defendant, and the crime involves victimization of another person and the use of violence.'" 100 Md.App. 796, quoting *Holmes v. State*, 65 Md. App. 428, 438–39, 501 A.2d 76, 80–1 (1985), *rev'd on other grounds*, 310 Md. 260, 528 A.2d 1279 (1987). The court pointed out that the charges of which the petitioner was accused and convicted "did not reflect any use of violence" *id.*, therefore, it concluded "that the issue of racial bias was not fairly generated by this case and, therefore, the court was not required to specifically question the jury on this basis." *Id.*

At the petitioner's request, we issued a writ of certiorari to consider this important issue.

## II

As relevant to the issue this case presents, in Maryland, the principles governing jury *voir dire* are well settled.

*Davis v. State,* 333 Md. 27, 34–5, 633 A.2d 867, 870–71 (1993); *Bedford v. State,* 317 Md. 659, 670–71, 566 A.2d 111, 116–17 (1989); *Brown v. State,* 220 Md. 29, 35, 150 A.2d 895, 897–98 (1959); *McGee v. State,* 219 Md. 53, 58–9, 146 A.2d 194, 196 (1959); *Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 605, 143 A.2d 627, 631 (1958); *Langley v. State,* 281 Md. 337, 340, 378 A.2d 1338, 1339 (1977); *Waters v. State,* 51 Md. 430, 436 (1879). Of course, the nature and extent of the *voir dire* procedure, *Bedford,* 317 Md. at 670, 566 A.2d at 116–17; *Langley,* 281 Md. at 341, 378 A.2d at 1340; *McGee,* 219 Md. at 58–9, 146 A.2d at 196, as well as the form of the questions propounded, *Casey,* 217 Md. at 605, 143 A.2d at 631, are matters that lie initially within the discretion of the trial judge. *Davis,* 333 Md. at 34, 633 A.2d at 870; *Bedford,* 317 Md. at 670, 566 A.2d at 116–17. Undergirding the *voir dire* procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the *voir dire,* is a single, primary, and overriding principle or purpose: "to ascertain 'the existence of cause for disqualification.'" *McGee,* 219 Md. at 58, 146 A.2d at 196, quoting *Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952) (citations omitted). This is consistent with the "fundamental tenet underlying the ... trial by jury ... that each juror, as far as possible, 'be impartial and unbiased.'" *Davis,* 333 Md. at 35, 633 A.2d at 871 (quoting *Langley,* 281 Md. at 340, 378 A.2d at 1339, in turn citing *Waters,* 51 Md. at 436). Thus, the purpose of the *voir dire* examination is to exclude from the venire those potential jurors for whom there exists cause for disqualification, so that the jury that remains is "capable of deciding the matter before [it] based solely upon the facts presented, 'uninfluenced by any extraneous considerations.'" *Id.*

One way to achieve the desired result is by inquiring of the venire "strictly within the right to discover the state of mind of the [potential] juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him [or her]." *Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343 (1946). In this regard, we have held that "any circumstances which may reasonably be regarded as rendering a

person unfitted for jury service may be made the subject of questions and a challenge for cause." *Id.* *See also Brown,* 220 Md. at 35, 150 A.2d at 897–98, in which we observed:

> [I]f there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case.

(quoting *State v. Higgs,* 143 Conn. 138, 120 A.2d 152, 154 (1956)). Where, therefore, a defendant's proposed *voir dire* questions concern a specific cause for disqualification, he or she has "a right to have [those] questions propounded to prospective jurors...." *Casey,* 217 Md. at 605, 143 A.2d at 631. That "right" to examine prospective jurors to determine whether any cause exists for disqualification is guaranteed by Article 21 of the Maryland Declaration of Rights. *Bedford,* 317 Md. at 670, 566 A.2d at 116. And the proper focus of the *voir dire* examination is the venireperson's state of mind and the existence of bias, prejudice, or preconception, *i.e.,* "a mental state that gives rise to cause for disqualification...." *Davis,* 333 Md. at 37, 633 A.2d at 872.

In *Davis,* we quite recently identified yet again areas of inquiry which, if reasonably related to the case at hand, are mandatory subjects of the *voir dire* examination. 333 Md. at 36, 633 A.2d at 871. Because "[t]hese areas entail potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them," we concluded that the trial court must question the prospective jurors about them. *Id.* Among the areas of inquiry is prospective jurors' possible racial bias. *See Bowie v. State,* 324 Md. 1, 15, 595 A.2d 448, 455 (1991). This is consistent with *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its Maryland progeny, *e.g. State v. Gorman,* 324 Md. 124, 596 A.2d 629 (1991); *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (1988); *Tolbert v. State,* 315 Md. 13, 553 A.2d 228 (1989); *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989); *Gray v. State,* 317

Md. 250, 562 A.2d 1278 (1989). Under *Batson,* race is deemed to be a suspect class and its use for racial discrimination purposes in the selection of a jury is held subject to strict scrutiny. *See Tyler v. State,* 330 Md. 261, 263, 623 A.2d 648, 649 (1993) (quoting *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82).[1] Racial prejudice and bias has not been eradicated even as of today. And, as *Davis,* 333 Md. at 36, 633 A.2d at 872, recognized, a prospective juror who is prejudiced or biased based on race would be unable objectively to decide a matter in which a person of that race is a party.

In this case, the petitioner is an African–American on trial for a drug possession crime, whose guilt or innocence must be determined by the jury. We hold that he was entitled to have questions propounded to the *venire* on its *voir dire* concerning this possible prejudice or racial bias. The trial court's failure to propound such a question was an abuse of discretion.

### III

We are aware, of course, that the Supreme Court of the United States has held that "there is no *per se* constitutional rule . . . requiring inquiry as to racial prejudice" based solely on an alleged criminal confrontation between an African–American assailant and a white victim. *Ristaino v. Ross,* 424 U.S. 589, 596 n. 8, 96 S.Ct. 1017, 1021 n. 8, 47 L.Ed.2d 258, 264 n. 8 (1976). That Court determined that the constitutional necessity to question prospective jurors concerning their racial or ethnic bias arises only when, "special circumstances," of the kind reflected in *Ham v. South Carolina,* 409 U.S. 524, 93

---

**1.** In *Tyler v. State,* 330 Md. 261, 623 A.2d 648 (1993), noting the State's parallel treatment of race and gender, this Court held that the State was prohibited from using preemptory challenges to exclude persons from jury service based solely on their sex. *Id.* at 270, 623 A.2d at 653.

Among the other mandatory areas of inquiry mentioned in *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993), are religious bias, *See Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 606–07, 143 A.2d 627, 632 (1958), and whether prospective jurors would weigh police officers' testimony more favorably than the defendant's, based solely on the police officers' official status, *see Langley v. State,* 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977).

S.Ct. 848, 35 L.Ed.2d 46 (1973), are present. *Ristaino*, 424 U.S. at 594–97, 96 S.Ct. at 1020–22, 47 L.Ed.2d at 262–65.

In *Ham*, the African–American civil rights activist, who was charged with a drug offense, defended on the basis that the police framed him in retaliation for his active, and widely known civil rights activities. Noting that "Ham's reputation as a civil rights activist and the defense he interposed were likely to intensify any prejudice that individual members of the jury might harbor," the *Ristaino* Court concluded that "racial issues ... were inextricably bound up with the conduct of the trial" and that gave rise to the consequent need for *voir dire* "questioning specifically directed to racial prejudice" to assure the empaneling of an impartial jury. 424 U.S. at 597, 96 S.Ct. at 1022, 47 L.Ed.2d at 264. In *Rosales–Lopez v. United States*, 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22, 29 (1981), the Court explained the *Ristaino* holding as follows:

> Only when there are more substantial indications of the likelihood of racial or ethnic prejudice [than an interracial confrontation] affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the juror's ability to deal impartially with this subject amount to an unconstitutional abuse of discretion.

In that case, the Supreme Court characterized the racial discrimination issue as one involving a conflict affecting the appearance of justice. Acting pursuant to its supervisory authority over the federal courts, the Court acknowledged, as it previously had done in *Ristaino, see* 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9, 47 L.Ed.2d at 265 n. 9, that "it is usually best to allow the defendant to resolve this conflict by making the determination of whether or not he would prefer to have the inquiry into racial or ethnic prejudice pursued." 451 U.S. at 191, 101 S.Ct. at 1636, 68 L.Ed.2d at 30 (footnote omitted).[2]

---

2. In the footnote to this statement, the Court pointed out:

> Of course, the judge need not defer to a defendant's request where there is no rational possibility of racial prejudice. But since the courts are seeking to assure the appearance and reality of a fair trial,

It noted, however, that reversible error occurs only when the circumstances of the case present "a reasonable possibility that racial or ethnic prejudice might have influenced the jury." *Id.* The Court asserted that such a possibility exists when the defendant, who is accused of a violent crime, and the victim are of different racial or ethnic groups. *Id.* at 192, 101 S.Ct. at 1636, 68 L.Ed.2d at 31. It also recognized that "[t]here may be other circumstances that suggest the need for such an inquiry." *Id.* Because in that case, the defendant was accused of a victimless crime—aiding members of his own ethnic group to gain illegal entry in the United States, the Court held that the trial court's refusal to propound *voir dire* questions on racial or ethnic bias was harmless; there was no reasonable possibility that racial ethnic or prejudice influenced the jury's evaluation of the evidence.

This Court and the Court of Special Appeals have applied a similar rule. In *Bowie*, 324 Md. at 15–16, 595 A.2d at 454–55, we held that, where the defendant and the victim are of different races and the case involves the violent victimization of other persons, inquiry into juror racial bias is required. *See also Humphreys v. State*, 227 Md. 115, 118, 175 A.2d 777, 778 (1961); *Contee v. State*, 223 Md. 575, 580, 165 A.2d 889, 892 (1960); *Brown*, 220 Md. at 34–5, 150 A.2d at 897–98; *Holmes*, 65 Md.App. at 438–39, 501 A.2d at 81; *Tunstall & Alton v. State*, 12 Md.App. 723, 726–27, 280 A.2d 275, 277 (1971), *limited by Thornton v. State*, 31 Md.App. 205, 355 A.2d 767 (1976); *Smith v. State*, 12 Md.App. 130, 131, 277 A.2d 622, 623 (1971).

This is the first occasion that we have had to address the situation where *voir dire* into racial or ethnic bias was requested in a case which did not involve interracial violence. We agree with the Supreme Court that determining an appropriate nonconstitutional standard involves resolution of a con-

if the defendant claims a meaningful ethnic difference between himself and the victim, his *voir dire* request should ordinarily be satisfied. *Rosales–Lopez v. United States*, 451 U.S. 182, 191 n. 7, 101 S.Ct. 1629, 1635 n. 7, 68 L.Ed.2d 22, 30 n. 7 (1981).

flict concerning the appearance of justice. *Rosales–Lopez*, 451 U.S. at 190, 101 S.Ct. at 1636, 68 L.Ed.2d at 29–30. Also like that Court, we agree that how the conflict is to be resolved ordinarily should be determined by the defendant. Unlike that Court, however, we strike a different balance when the trial court does not defer to the defendant's preferred resolution.

In *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), in which an African–American was tried for the murder of a white police officer, the Court explained why it was proper for the *venire* to be questioned with regard to racial prejudice:

> The argument is advanced on behalf of the government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute.

*Id.* at 314–15, 51 S.Ct. at 473, 75 L.Ed. at 1058. The Court also rejected the argument that it is the civil privileges of a racial or ethnic group as a whole that determines the propriety of the inquiry. In that regard, it pointed out:

> [b]ut the question is not as to the civil privileges of the [N]egro, or as to the dominant sentiment of the community and the general absence of any disqualifying prejudice, but as to the bias of the particular jurors who are to try the accused. If in fact sharing the general sentiment, they were found to be impartial, no harm would be done in permitting the question; but if any one of them was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit. Despite the privileges accorded to the [N]egro, we do not think that it can be said that the possibility of such prejudice is so remote as to justify the

risk in forbidding the inquiry. And this risk becomes most grave when the issue is of life or death.

*Id.* at 314, 51 S.Ct. at 473, 75 L.Ed. at 1058. While we have not heretofore embraced, in total, the *Aldridge* analysis, we do so now. We hold, as a matter of Maryland nonconstitutional criminal law, that the refusal to ask a *voir dire* question on racial or ethnic bias or prejudice under the circumstances of this case constituted reversible error. To the extent that our cases and those of the Court of Special Appeals are to the contrary, they are, to that extent, overruled.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND THE CASE IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR NEW TRIAL. COSTS TO BE PAID BY THE MAYOR & CITY COUNCIL OF BALTIMORE.*